**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **HORSEY DENISON LANDSCAPING, LLC,** | |
| *Plaintiff/Counter-Defendant*, | |
| **v.** | |
| **DONNA DENISON,** | |
| *Defendant/Counter-Plaintiff*. | **Case No. 1:24-cv-01484-JRR**[1] |
| **DONNA DENISON,** | |
| *Third-Party Plaintiff*, | |
| **v.** | |
| **ROBERT E. HORSEY,** *et al.*, | |
| *Third-Party Defendants*. | |

**<u>MEMORANDUM OPINION</u>**

Pending before the court is Defendant/Counter-Defendant/Third-Party Plaintiff Donna Denison's Motion for Partial Summary Judgment (the "First Motion") and Renewed Motion for Partial Summary Judgment Regarding the "PEPCO" Offset Claim as to Third-Party Defendants Only (the "Second Motion"). (ECF Nos. 33, 108; collectively, the "Motions.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, by accompanying order, the Motions will be granted.

---

[1] To conserve space, the court has abbreviated the case caption to reflect the parties' designations in the instant Motions.

## I.    FACTUAL BACKGROUND[2]

### A.  The Parties' Transaction and Related Agreements

On October 22, 2021, Defendant/Counter-Defendant/Third-Party Plaintiff Donna Denison and Plaintiff/Counter-Defendant Horsey Denison Landscaping, LLC ("HDL") entered into a Stock and Membership Interest Purchase Agreement (the "APA") pursuant to which HDL (as "Buyer") purchased the equity interests in Denison Landscaping, Inc., Denison Landscaping & Nursery, Inc., and Denison Farms, LLC (collectively, the "Companies") from Ms. Denison (as "Seller").  (ECF No. 1 ¶ 2; *see* APA, Ex. 1, ECF No. 1-3.)  On the same date, Ms. Denison and HDL executed a Note (the "Seller Note"),[3, 4] providing that HDL (as "Borrower") would pay Ms. Denison (as "Lender") $6,000,000 (the "Principal Sum"), together with interest subject to adjustment under the terms of the APA.  *Id.* ¶ 3; *see* Seller Note, Ex. 2, ECF No. 1-4.[5]  Also on October 22, 2021, Ms. Denison and Third-Party Defendants Robert E. Horsey and David W. Horsey (jointly, the "Buyer's Principal" under the APA) executed a Guaranty Agreement under which Messrs. Horsey (individually and jointly, as "Guarantor" under the Guaranty Agreement) guaranteed HDL's payment obligations under the APA and the Seller Note.  (ECF No. 108-1 ¶ 41; *see* Guaranty Agreement, Ex. 2, ECF No. 8-2.)

Pursuant to Article IV of the APA, Ms. Denison—as Seller of the Companies—made certain representations and warranties as to the condition of the Companies as of the Closing

---

[2] For purposes of this memorandum opinion, the background consists of the facts and procedural history pertinent to the instant Motions.  Unless otherwise noted, the following facts are undisputed.

[3] The APA defines "Seller Note" as "that certain Promissory Note attached hereto as Exhibit C, and incorporated as if set forth fully herein, in the original principal amount of the Seller Note Amount dated as of even date herewith by the Buyer, as maker, payable to the Seller.  Seller Note shall be secured by a personal guaranty from Robert E. Horsey and David W. Horsey and by a second-position lien on all assets of the Companies, which lien shall be subordinate to Buyer's Fourteen Million Dollar ($14,000,000.00) financing lien with FNB Corporation." APA § 1.01 at p. 13.

[4] Unless otherwise defined herein, capitalized terms shall have the meanings assigned to them in the APA.  *See* APA § 1.01.

[5] The Seller Note identifies Ms. Denison as the Lender and HDL as the Borrower.  Seller Note, Ex. 2, ECF No. 1-4 at p. 1.

Date (October 22, 2021).  (ECF No. 1 ¶ 17; *see* APA § 4 at pp. 23–43.)[6]  HDL asserts it agreed to purchase the Companies in reliance on these representations and warranties.  *Id.* ¶ 17.

Pursuant to the payment schedule under the Seller Note, HDL was to make a payment of $1,500,000.00 (plus accrued interest) on or before April 14, 2022; $2,000,000.00 (plus accrued interest) on or before December 31, 2022; $1,500,000.00 (plus accrued interest) on or before December 31, 2023; and a payment equal to any remaining principal balance along with any and all interest accrued and unpaid on or before December 31, 2024.  (Seller Note, ECF No. 1-4 at ¶¶ 1, 2.)  To date, HDL has made no payment (or partial payment) under the Seller Note.

Pursuant to the Guaranty Agreement (ECF No. 8-2), Messrs. Horsey "unconditionally and irrevocably" guaranteed HDL's payment obligation under the Seller Note and the APA.  *Id.* ¶ 2.1.  By letter of October 31, 2023 (ECF No. 8-3), Ms. Denison, *inter alia*, notified Messrs. Horsey of HDL's non-payment of its obligations as guaranteed by Messrs. Horsey via the Guaranty Agreement.  *See also* ECF No. 8-4, letter of November 21, 2023, from counsel for Ms. Denison to Messrs. Horsey and their counsel, titled "Notice of Acceleration," in which Ms. Denison (through counsel) advises of her "elect[ion] to accelerate [per § 5.2 of the Guaranty Agreement] any and all payments due, and any remaining balance, which shall include all principal payments, interest, late fees, attorneys' fees, and costs, under the terms of the [Seller] Note."  Importantly (for reasons made clear below), the Guaranty Agreement expressly provides that the guaranteed obligations "are made subject to [HDL's] offset rights in the [Seller] Note."  (EFC 8-2 § 2.6.)  To date, neither Robert Horsey nor David Horsey has made any payment to Ms. Denison because, they assert, none is due based on applicable offsets and

---

[6] Page number references are to internal CM/ECF pagination.

adjustments to which HDL is entitled and which inure to their benefit under the Guaranty Agreement.[7]

### B. Indemnification Provisions and Indemnity Claim Framework

Article VII of the APA requires Ms. Denison to indemnify HDL for any and all Losses[8] incurred by HDL under certain circumstances. APA § 7 at pp. 51–56. The indemnification provision of the APA provides in pertinent part:

> 7.02   Indemnification By Seller Parties. Subject to the other terms and conditions of this Article VII, Seller shall indemnify Buyer and each of its successors and permitted assigns and all of their respective Affiliates (including the Companies) and Representatives against, and shall defend and hold them harmless from and against, any and all Losses (whether or not involving a Third Party Claim) incurred or sustained by, or imposed upon, any of them based upon, arising out of, relating to, or in connection with any one or more of the following:
>
> > (a) any inaccuracy in or breach of any of the representations or warranties of a Seller Party contained in this Agreement or any other agreement delivered pursuant hereto, or the certificates delivered by any Seller Party pursuant to Section 2.04(a); . . . .

*Id.* § 7.02(a) at p. 52.

Pursuant to the Seller Note, the Principal Sum of $6,000,000 owed by HDL to Ms. Denison is subject to potential offset for indemnity claims. (ECF No. 34-1 at p. 4.) With respect to Ms. Denison's indemnification obligations, the Seller Note provides in pertinent part:

> (a) Lender hereby acknowledges that the Parties have certain indemnification obligations under the terms of the [APA]. Should Lender be required to indemnify the Borrower under the terms of the [APA] or otherwise breach her obligations thereunder, those indemnification obligations or damages as a

---

[7] To the extent Messrs. Horsey defend nonpayment on the Guaranty Agreement on matters referred to the challenged arbitration proceeding conducted by Mr. Vallit (*see* ECF No. 120-1 at p. 18), the court refers the reader to the memorandum opinion and order at ECF Nos. 197 and 198, *inter alia*, granting the Petition at ECF No. 1 in Case No. 1:25-cv-00448-JRR, declaring the Vallit Report an enforceable arbitration award per the Federal Arbitration Act, and advising that the court will enter judgment consistent with same upon adjudication of the fee petition now pending at ECF No. 200.

[8] The APA defines "Losses" as the "actual out-of-pocket losses, Liabilities, damages, judgments, settlement payments, awards, fines, fees, penalties, costs, interest or expenses, including reasonable attorneys' fees and expenses and cost of investigation." APA § 1.01 at p. 11. "Liabilities," and other defined terms therein, including "Indebtedness" and "Taxes," are defined at § 1.01 at pp. 11, 9 and 14, respectively.

> result of the breach may be offset against the amount due and owing hereunder pursuant to the provisions of this Section 18. The offsets contemplated herein shall be dollar-for-dollar against the outstanding sums due under this Note.

Seller Note, § 18(a) at p. 6.  Further, the Seller Note provides that "[a]ll claims for offset shall be made in accordance with the claim procedures set forth in Exhibit A" attached to the Seller Note.  *Id.* § 18(b) at p. 6.

Per the APA at Article VII, the party seeking indemnification must comply with the "Indemnification Procedures" set forth in § 7.05, which provides in relevant part:

> Notice; Defense.  If any Indemnified Party seeks indemnification under this Article VII, it shall give written notice to the Indemnifying Party of the material facts and circumstances giving rise to the indemnifiable claim (to the extent then known). Any claim by an Indemnified Party on account of a Loss which does not result from a Third Party Claim shall be asserted by the Indemnified Party giving the Indemnifying Party written notice thereof prior to the expiration of the applicable survival period for such direct claim (a "Claim Notice").  The Indemnifying Party shall have 30 days after receipt of such Claim Notice to respond in writing.  During such 30-day period, the Indemnified Party shall allow the Indemnifying Party and its professional advisors to investigate the matter or circumstance alleged to give rise to the Claim Notice and the Indemnified Party shall assist the Indemnifying Party or any of its professional advisors may reasonably request. If the Indemnifying Party does not respond within such 30 day notice period, then the Claim Notice shall be final, binding and conclusive on the Parties as an Agreed Claim . . . .

APA § 7.05(a) at p. 54.[9]  The APA further provides that the "foregoing indemnification procedures are meant to mirror the claim procedures set forth in Exhibit A to the Seller Note[.]" *Id.* at p. 55.

As referenced above, Exhibit A to the Seller Note sets forth indemnification claim procedures, and provides in part:

> Borrower shall deliver a notice to Lender of any claim of indemnification obligation or amount related to breach under the

---

[9] An "Agreed Claim" is defined as "[a]ny items accepted by Indemnifying Party or otherwise conclusive, final and/or binding on Indemnifying Party[.]"  APA § 7.05(a) at p. 54.

> Purchase Agreement to be offset against the amount due and owing, along with any relevant documentation supporting such claim (the "Claim Notice"); provided that, in order to be effective, any Claim Notice must describe in reasonable detail all material facts and circumstances giving rise to the indemnifiable claim, and include any material and relevant documentation in Borrower's possession supporting the reason for such Claim Notice. Lender shall have thirty (30) days after receipt of the Claim Notice to investigate the matter or circumstance alleged to give rise to the claim and the Borrower shall assist the Lender or any of its professional advisors in the review of all such supporting documentation.

Seller Note, Ex. A ¶ 1.

Under the Seller Note, if the Lender (Ms. Denison) disputes the contents of a Claim Notice, the Lender must provide the Borrower (HDL) with a written Claim Notice Dispute Notice within 30 days following delivery of the Claim Notice. *Id.* ¶¶ 2–3. If the Lender fails to submit a timely Dispute Notice, the Borrower's Claim Notice "shall be final, binding and conclusive" on the parties. *Id.* ¶ 3. Moreover, "in order to be effective, any Claim Notice Dispute Notice must describe in reasonable detail the items contained in the Claim Notice that Lender disputes, and the basis for any such disputes, and include relevant documentation supporting the reason for such dispute[.]" *Id.*

### C. Relevant Provisions Regarding Representations and Warranties

As explained above, Article IV of the APA sets forth the representations and warranties made by Ms. Denison concerning the Companies. APA § 4 at pp. 23–43. With respect to the representations and warranties made by Ms. Denison for which HDL may seek indemnification, pertinent to HDL's claims here, Ms. Denison asserts the following portions of § 4.10(d) and 4.14(a) are the relevant provisions of the APA. (ECF No. 33-1 at p. 7.)

Section 4.10(d) provides in relevant part:

> Except as set forth on <u>Schedule 4.10(d):</u> (i) the current use and occupancy of the Real Property[10] and the operation of the

---

[10] "Real Property" is "the Leased Real Property and the Owned Real Property" as defined under the APA. APA § 1.01 at p. 13.

> Companies' Business as currently conducted thereon do not violate any applicable zoning law, easement, covenant, condition, restriction or similar provision in any instrument of record affecting the Real Property, or the Leases, and (ii) to each Seller Parties' Knowledge, no fact or condition exists that could result in the termination or impairment of presently available access from adjoining public or private streets or ways or in the discontinuation of presently available sewer, water, electric, gas, telephone or other utilities or services for any Real Property.

APA § 4.10(d) at p. 30.

Section 4.14(a) provides in relevant part:

> Except as set forth on Section 4.14(a) of the Disclosure Schedule, the Companies are, and for the last five (5) years have been, in compliance with all Laws applicable to it or its business, properties, or assets, except where the failure to be in compliance would not have a Material Adverse Effect.

*Id.* § 4.14(a) at p. 32.

For its part, HDL contends the relevant provisions of Article IV are not those identified by Ms. Denison set forth above, but rather § 4.07 regarding undisclosed liabilities and § 4.13 addressing legal proceedings and government orders. (ECF No. 34-1 at p. 11.)

Section 4.07 provides:

> No Undisclosed Liabilities.  No Company has any material Liabilities,[11] obligations or commitments of any type, except Liabilities, obligations or commitments reflected on a balance sheet prepared in accordance with Accounting Principles: (a) which are adequately reflected or reserved against in the Interim Balance Sheet; (b) which have been incurred in the Ordinary Course since the Interim Balance Sheet Date (other than those which relate to any breach or violation of any Law or Contract or relate to any tort); or (c) those under Contracts described on Section 4.08 of the Disclosure Schedules or under Contracts which are not required to be disclosed thereon, in each case, which relate to performance obligations first arising after the Closing and do not relate to any breach or violation of any Law or any such Contract; and (d) those which are set forth in Section 4.07 of the Disclosure Schedule.

---

[11] "Liabilities" is defined as "any and all Indebtedness, Taxes, liabilities, obligations, commitments and claims, whether accrued or fixed, known or unknown, absolute or contingent, matured or unmatured or determined or determinable, or otherwise." APA § 1.01 at p. 11. *See id.* § 1.01 at pp. 9, 14, defining "Indebtedness" and "Taxes," respectively.

APA § 4.07 at pp. 26–27.

Section 4.13 provides:

> Legal Proceedings; Governmental Orders.
>
> (a) Except as set forth in Section 4.13(a) of the Disclosure Schedule, there are, and during the five (5) years immediately preceding the Closing Date there have been, no (i) Proceedings pending or, to Seller Parties' Knowledge, threatened against any Company or any of its properties or assets, or (ii) Proceedings pending or threatened by any Company against any Person.
>
> (b) There are no outstanding Governmental Orders and no unsatisfied judgments, penalties or awards against or affecting any Company which would have a Material Adverse Effect.
>
> (c) Except as set forth in Section 4.13(b) of the Disclosure Schedule, there are, and during the five (5) years immediately preceding the Closing Date there have been, no Proceedings pending or threatened against any Company or any of its properties or assets that could result in a judgment, penalty, or award against or affecting any Company that would not be paid entirely by an insurance policy maintained in good standing by the relevant Company as of Closing.

*Id.* at p. 32.

### D.  Real Property at Issue and the Pepco Easement

Pertinent to HDL's claims here, Ms. Denison asserts the Real Property described at § 4.10(d) of the APA consists of the following three properties listed on Schedule 4.10(a) of the APA: "(1) 2807 Accokeek Road, Waldorf, MD 20601 ('2807 Accokeek Road'; Tax ID: 05-0413203); (2) 3009 Accokeek Road, Waldorf, MD 20601 ('3009 Accokeek Road'; Tax ID: 05-0315333); and (3) 15800 Sharperville Road[12] properties."  (ECF No. 33-1 at pp. 7–8; *see* Schedule 4.10(a), Ex. 3, ECF No. 33-5.)[13]  With the exception of 5.81 acres of 15800

---

[12] The parties' papers and exhibits refer to this property as both Sharperville Road and Sharpersville Road; Ms. Denison clarifies that the correct reference is to "Sharperville Road."  (ECF No. 123 at p. 2 n.1.)

[13] Exhibits 3 through 5 to Ms. Denison's Motions consist of portions of the Disclosure Schedule identified in the APA.  The APA defines "Disclosure Schedule" as "the disclosure schedule and any other schedules to this Agreement delivered by Seller to Buyer in connection with this Agreement. The Parties hereto acknowledge that the Disclosure Schedule is not delivered on the date of this Agreement, but shall be delivered by Seller and

Sharperville Road listed as an "[o]ffice location for each of the Companies," the comments to Schedule 4.10(a) for each of the three properties listed above provide that they are "[u]sed by Denison Farms, LLC to grow inventory." (Schedule 4.10(a), Ex. 3, ECF No. 33-5.)

Schedule 4.10(d), titled "List of Potential Real Property Issues," includes a summary of issues as to 15800 Sharperville Road; it states: "The Company has continuously grown inventory on the lots located next to the 15800 Sharperville Road properties without authorization from the current owner, Potomac Electric Power Co." ("Pepco.") (Schedule 4.10(d), Ex. 4, ECF No. 33-6.)[14]  Schedule 4.14, titled "Compliance with Laws", provides in relevant part:

> Denison Landscaping maintains inventory on several parcels of land owned by [Pepco]. Specifically, the parcels owned by [Pepco] on which Denison Landscaping maintains inventory without authorization and/or approval include parcels 05-037676, 05-0371005, 05-0370726, 05-0370650, 05-0371062, and 05-0371047. . . .

Schedule 4.14, Ex. 5, ECF No. 33-7. Ms. Denison asserts the parcels with corresponding Tax ID numbers 05-0371005 and 05-0370726 are "associated with property tracts owned by [Pepco] that cross the 2807 Accokeek Road and 3009 Accokeek Road properties." (ECF No. 33-1 ¶ 19.)

On June 19, 1975, the predecessor-in-interest for 3009 Accokeek Road conveyed a tract of land that passed through the property to Pepco for a utility easement. (ECF No. 33-1 at p. 9; *see* June 1975 Deed, Ex. 6, ECF No. 33-8.)[15] The 1975 Deed reserves to the grantors, "the right and privilege to use the Property for agricultural purposes so long as such use does not

---

incorporated into this Agreement prior to Closing pursuant to Section 2.05(b)(v)." APA § 1.01 at p. 7. By affidavit, Ms. Denison attests that Exhibits 3 through 5 are "authentic, true, and correct" copies of the pertinent Schedules to the APA. (Ex. 1, ECF No. 33-1 ¶¶ 5–7.) In its Opposition, HDL notes it "agrees the individual 'Schedules' were meant to qualify as the corresponding section of one larger 'Disclosure Schedule' and neither HDL nor either of the Messrs. Horsey disputes the authenticity of these Exhibits." (ECF No. 34-1 at p. 5 n.1.) Accordingly, the court may rely on them in evaluating the Motions.

[14] The Tax IDs for the Sharperville Road properties are listed as 05-2837532 and 05-2798361.

[15] As with Exhibits 3 through 5, neither HDL nor Messrs. Horsey contests the authenticity of any remaining exhibits to Ms. Denison's Motions.

interfere with any use of the Property" Pepco, its successors, or assigns may make. (June 1975 Deed, Ex. 6, ECF No. 33-8 at p. 4.)  It also provides that the holders of such reserved rights "shall at no time have any right to erect or maintain any building or other structure, or to plant any trees," or "to erect new fences on said Property without the written permission of" Pepco as grantee. *Id.*

By deed executed June 26, 2008, John P. Denison[16] conveyed to Bull Run Family LLC, his "entire undivided one half (1/2) Tenant in Common Interest" in 3009 Accokeek Road. (2008 Deed, Ex. 7, ECF No. 33-9; 3009 Accokeek Road SDAT Entry, Ex. 8, ECF No. 33-10.) Bull Run Family LLC Managing Members Joshua Denison, Katelyn Denison, James Denison, and John David Denison executed the deed on behalf of the LLC; and Bull Run Family LLC still holds that interest in 3009 Accokeek Road. (ECF No. 33-9 at p. 4.)  The Tax ID number for the tract of land owned by Pepco and passing through the 3009 Accokeek Road Parcel is 05-0370726.  (Pepco SDAT Entry for 3009 Accokeek Road, Ex. 11, ECF No. 33-13.)[17]

On October 1, 1975, the predecessor-in-interest for 2807 Accokeek Road similarly conveyed to Pepco a tract of land bisecting the property.  (ECF No. 33-1 at pp. 9–10; *see* October 1975 Deed, Ex. 12, ECF No. 33-14.)  The October 1975 Deed includes the same language set forth in the June 1975 Deed, allowing grantors the right to use the property for agriculture purposes but disallowing grantors from erecting or maintaining buildings, planting trees, or erecting fences without written permission of Pepco.  (October 1975 Deed, Ex. 12, ECF No. 33-14 at p. 4.)  By special warranty deed of November 28, 2020, the 2807 Accokeek Road property (Parcel 3-A and 3-B) was conveyed to Ms. Denison, the current owner of the property.  (2020 Deed, Ex. 13, ECF No. 33-15; 2807 Accokeek Road SDAT Entry, Ex. 14, ECF

---

[16] John P. Denison is Ms. Denison's late husband.  Mr. Denison died May 25, 2017, leaving the Companies to Ms. Denison.  (ECF No. 33-1 at p. 4.)

[17] The court notes that the deed reference number (04498/00171) on the Pepco SDAT Entry for 3009 Accokeek Road matches the number on the first page of the June 1975 Deed conveying the tract to Pepco.  (*See* June 1975 Deed, Ex. 6, ECF No. 33-8; Pepco SDAT Entry, Ex. 11, ECF No. 33-13.)

No. 33-16.)  The 2020 Deed references the "PEPCO right-of-way" and the October 1975 Deed "recorded in [the land records at] Liber 445 Folio 167."  (2020 Deed, Ex. 13, ECF No. 33-15 at p. 5.)  The Tax ID number for this tract of land owned by Pepco is 05-0371005.  (Pepco SDAT Entry for 2807 Accokeek Road, Ex. 15, ECF No. 33-17.)[18]

### E.  Pepco Easement Indemnity Claim

On April 12, 2024, counsel for HDL sent a letter via email to counsel for Ms. Denison advising that the letter "represents an indemnity Claim Notice" pursuant to the APA and Seller Note.  (Pepco Claim, Ex. No. 10, ECF No. 1-12 at p. 1.)[19]  The Pepco Claim asserts that during the first quarter of 2024, HDL and Messrs. Horsey "discovered that the use of approximately 20 acres of the Real Property[, as defined in the APA,] was in violation of applicable easement restrictions and have been directed to remove all buildings and inventory from that area of the Real Property."  *Id*.  The claim alleges that these violations "constitute breaches of the representations and warranties made by Seller under the" APA and the claim serves as notice of Buyers' claim for indemnity for the Losses related to Seller's breaches.  *Id.*  The claim further asserts:

> The amount of the offsets [against the Seller Note] equals the amount of Losses attributable to: the loss of continued use of the 20 acres, the cost of labor and material associated with the removal of inventory, and the value of inventory lost during the required removal. Further, Buyers seek indemnity through offsets against the [Seller] Note for all legal fees and costs associated with resolving these claims. Current estimate places the minimum amount of these Losses at this time at $1,212,878.00.

*Id.* at pp. 1–2.

In support of the above, the Pepco Claim asserts that Buyer representatives met with representatives from Pepco and Southern Maryland Electric Cooperative ("Smeco") on March

---

[18] Again, the court notes that the deed reference number (04545/00167) on the Pepco SDAT Entry for 2807 Accokeek Road matches the number on the first page of the October 1975 Deed conveying the tract to Pepco. (*See* October 1975 Deed, Ex. 12, ECF No. 33-14; Pepco SDAT Entry, Ex. 15, ECF No. 33-17.)

[19] The Pepco Claim identifies HDL and Messrs. Horsey as Buyers and Ms. Denison as Seller.

28, 2024, to inspect Pepco's property that passes through the Accokeek properties described above. (Pepco Claim, Ex. No. 10, ECF No. 1-12 at p. 2.) Therein, HDL and Messrs. Horsey allege further:

> Notwithstanding the language in the Deed, the Acquired Companies built green houses, installed irrigation lines, fencing, and planted trees within the 350' restricted area for over 20 years prior to the Closing Date. The fencing, greenhouses, and trees in that 350' area are significant to the operation of the businesses. Concern over the plantings and use of the 350' area beneath the transmission lines resulted in the representation and warranty found in Section 4.10(d) of the [APA], which provides the Seller's representation and warranty that the use was expressly permitted.

*Id.*

With respect to the applicable representations and warranties under the APA, the Pepco Claim asserts Ms. Denison assured HDL and Messrs. Horsey as of the Closing Date that she had the requisite permission and consent to utilize the Pepco parcels as described above; however, they assert, she had no such permission or consent and, instead, "had actual knowledge that Pepco prohibited the business and use occurring in these areas of the Real Property." (Pepco Claim, Ex. No. 10, ECF No. 1-12 at p. 3.) The claim first cites §§ 4.14, 4.07, and 4.13 of the APA, where "Seller represented and warranted that the operation of the business of the companies was in compliance with all applicable laws, that there were no undisclosed liabilities, and that there were no threatened legal proceedings or governmental orders." *Id.* at p. 4. Additionally, the Pepco Claim specifically cites and emphasizes § 4.10(d), setting forth Ms. Denison's representations as to whether the current use, occupancy, and operation of the Companies on the Real Property violates any applicable zoning law, easement, covenant, and the like. *Id.*; *see* Section I.C. at pp. 5–6, *supra*.

On May 2, 2024, counsel for Ms. Denison responded to the Pepco Claim, objecting to the claim on grounds that it was not effective as a "Claim Notice" pursuant to the relevant notice procedures of the APA and Seller Note and, notwithstanding the claim's ineffectiveness,

12

the issues raised in the claim were "explicitly addressed and carved out" of the Seller's representations and warranties under the APA through Ms. Denison's disclosures in Schedules 4.10(d) and 4.14. (Ex. 17, ECF No. 33-19.) Both Schedules were attached as exhibits to Ms. Denison's response. *Id.* at pp. 5–8. Counsel for Ms. Denison also noted § 5.09 of the APA wherein the Buyer acknowledges and asserts that it conducted an "independent investigation, review and analysis of the business, results of operations, prospects, conditions (financial or otherwise) or assets of the Seller Parties . . . ." *Id.* at p. 4 (quoting APA § 5.09).

Mere days later, on May 7, 2024, Pepco sent a cease-and-desist letter addressed to the "Owners" (defined as Bull Run Family LLC, Abby Farms, and Denison Landscaping) concerning Pepco Property No. PG-1634-1635, which Pepco identified as its property bisecting 3009 Accokeek Road. ("Cease-and-Desist Letter," Ex. 18, ECF No. 33-20.) The letter references the meeting of March 28, 2024, with Messrs. Horsey (who, the letter contends, "represented themselves as employees" of the Owners) during which they "admitted to the planting of certain trees, installation of an irrigation system and storage of equipment and materials on Pepco's property and without Pepco's permission."[20] *Id.* at p. 2. The Cease-and-Desist Letter demands the Owners "immediately cease and desist from any further trespass upon Pepco's properties" and "remediate all encroachment and unlawful use of Pepco's property." The letter also places the Owners on notice that Pepco may seek reimbursement of its costs incurred in restoring its properties to their pre-existing condition, and reserves Pepco's right to pursue legal remedies in the event Pepco is "not satisfied" by the Owners' corrective action. *Id.* at p. 3. Although the Cease-and-Desist Letter expressly references the 3009 Accokeek Road property, Pepco's reference to Pepco Property No. PG-1634-1635 includes the Pepco tracts bisecting the 2807 and 3009 Accokeek Road properties, as set forth above; indeed,

---

[20] The court understands that this meeting of March 28, 2024, is the meeting referenced in the Pepco Claim described above.

the Cease-and-Desist Letter defines Pepco Property No. PG-1634-1635 as "the 'Properties.'" *Id*. at p. 1; *see* June 1975 Deed, Ex. 6, ECF No. 33-8 at p. 7; October 1975 Deed, Ex. 12, ECF No. 33-14 at p. 9.

## II.   **PROCEDURAL HISTORY**

On May 21, 2024, HDL initiated this action against Ms. Denison by filing a Complaint. (ECF No. 1.)  The Complaint asserts claims for breach of contract (Count I) and declaratory judgment (Count II) against Ms. Denison for her allegedly false representations and warranties made to induce HDL to purchase the Companies, as well as Ms. Denison's attempted acceleration of the Seller Note in breach of the APA and the Seller Note.  *Id.* ¶ 78-94.  On July 25, 2024, Ms. Denison filed an Answer (ECF No. 6) and a Third-Party Complaint (ECF No. 8) against Robert Horsey and David Horsey asserting a claim for breach of contract (the Guaranty Agreement).  Messrs. Horsey filed an Answer to the Third-Party Complaint on August 23, 2024.  (ECF No. 14.)  Subsequently, the court issued a scheduling order. (ECF No. 17.)  On December 13, 2024, Ms. Denison filed the First Motion regarding the Pepco Claim as to HDL. (ECF No. 33.)  The First Motion was fully briefed by HDL and Ms. Denison.  (ECF Nos. 34, 35.)

After the court granted a motion for leave to file counterclaims against HDL (ECF No. 51), on March 27, 2025, Ms. Denison filed two counterclaims against HDL for breach of contract.  (ECF No. 49.)  The counterclaims seek judgment against HDL for failure to pay certain sums at times specified under the APA and Seller Note and for failure to pay Ms. Denison the remaining Cash on Hand payable under the APA.  *Id.* ¶¶ 14–28.  On April 15, 2025, after holding an emergency hearing, the court granted Ms. Denison's emergency motion for leave to file a supplemental pleading.  (ECF No. 62.)  Thereafter, the court docketed Ms. Denison's Verified Omnibus Supplemental Counter-Complaint and Third-Party Complaint.

14

(ECF No. 63.)  The supplemental pleading raises the following supplemental counts against both HDL and Messrs. Horsey:

Supplemental Count I: Counterclaim [Against HDL] for Breach of Contract;

Supplemental Count II: Counterclaim [Against HDL] for Specific Performance;

Supplemental Count III: Counterclaim [Against HDL] for Accounting;

Supplemental Count IV: Counterclaim [against HDL] and Third-Party Claim [Against the Guarantors] for Violation of the Maryland Uniform Fraudulent Conveyance Act (Non-Intent); and

Supplemental Count V: Counterclaim [against HDL] and Third-Party Claim [Against the Guarantors] for Violation of the Maryland Uniform Fraudulent Conveyance Act (Intent).

*Id.* ¶¶ 31–40.

Also on April 15, 2025, on a second emergency motion filed by Ms. Denison, the court entered a Temporary Restraining Order ("TRO") enjoining HDL, its related entities, officers, agents, representatives, employees, and all other persons acting for, on behalf of, or in concert with HDL from, *inter alia,* selling, leasing, transferring, exchanging or otherwise disposing of certain collateral without Ms. Denison's prior written consent.  (ECF No. 64.)  On May 6, 2025, prior to resolution of Ms. Denison's Motion for Preliminary Injunction (ECF No. 72), HDL filed a Notice of Bankruptcy Stay.  (ECF No. 76.)[21]  Subsequently, on May 19, 2025, the court stayed this action in its entirety pursuant to the automatic stay provision at § 362 of the Bankruptcy Code. (ECF No. 84.)

On November 3, 2025, the court granted Ms. Denison's Motion to Lift Stay as to Third-Party Defendants Robert Horsey and David Horsey (the "Lift Stay Motion"), allowing the action to proceed as against Messrs. Horsey only.  (ECF No. 95.)  Given that the stay against

---

[21] HDL and the Companies sold by Ms. Denison to HDL (collectively, the "Debtors") all separately filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code.  The Bankruptcy Court subsequently entered an order directing the joint administration of the Debtors' cases under one action.  *See* Case No. 25-14103-LSS (Bankr. D. Md.), ECF No. 36.  The consolidated Debtors are separately represented by counsel from YVS Law, LLC, Paul Sweeney.

Respondent HDL remained in place, to allow the efficient administration of this action, the court ordered Ms. Denison to file a revised motion for partial summary judgment as to the Pepco Claim against Messrs. Horsey only and denied the First Motion against HDL as administratively moot.  (ECF No. 102.)  The order also vacated the TRO that had been stayed as a result of the bankruptcy proceedings.  *Id.*  While the Lift Stay Motion was pending, counsel for Messrs. Horsey moved to withdraw as counsel, which motion the court granted.  (ECF No. 103.)  Ms. Denison filed the Second Motion as against Messrs. Horsey on November 21, 2025.  (ECF No. 108.)  Messrs. Horsey subsequently obtained new counsel and filed a response in opposition to the Second Motion (ECF No. 120); Ms. Denison timely replied.  (ECF No. 123.)

While litigation in this case continued as to Ms. Denison and Messrs. Horsey only, on December 22, 2025, Ms. Denison filed a Motion for Relief from Automatic Stay in the related bankruptcy court proceeding to permit continuation of the instant litigation against HDL.  (Case No. 25-14103-LSS (Bankr. D. Md.), ECF No. 281.)  Shortly thereafter, on January 9, 2026, HDL and the Companies, as Debtors in the related bankruptcy action, filed an adversary proceeding against Ms. Denison and Messrs. Horsey, asserting multiple claims under the Bankruptcy Code.  (Case No. 26-00008-LSS (Bankr. D. Md.), ECF No. 1.)  Only days later, on January 12, 2026, Messrs. Horsey filed a Motion to Enforce Referral of the instant action to the Bankruptcy Court, seeking to transfer the entire action to the Bankruptcy Court, or, alternatively, to stay the entire action pending resolution of the related HDL bankruptcy proceeding.  (ECF No. 125.)  In response to the Debtors' adversary action, Ms. Denison filed a Motion to Withdraw the Reference of the Adversary Proceeding (the "Motion to Withdraw Reference") in this court and an opposition to Messrs. Horsey's Motion to Enforce Referral.  (Case No. 8:26-cv-00650-JRR, ECF No. 1; ECF No. 128.)[22]

---

[22] The Motion to Withdraw Reference was opened as a separate action, Case No. 8:26-cv-00650-JRR, which has since been consolidated with the instant action and administratively closed.  (ECF No. 162.)

16

Prior to the court's ruling on the Motion to Enforce Referral and Motion to Withdraw Reference, the Bankruptcy Court granted Ms. Denison's Motion for Relief from the Automatic Stay to permit the instant action to proceed as to HDL.  (Case No. 25-14103-LSS (Bankr. D. Md.), ECF No. 334.)  Accordingly, this court entered an order lifting the stay in this case as to proceedings maintained by or against HDL.  (ECF No. 156.)  Thereafter, at a hearing held in this court on the Motion to Enforce Referral and Motion to Withdraw Reference, Messrs. Horsey voluntarily withdrew their Motion to Enforce Referral and the parties' consented to the court granting Ms. Denison's Motion to Withdraw Reference of the related adversary proceeding, thereby consolidating the related claims into this action and adding the joint Debtors (the Companies) as consolidated Plaintiffs in this action.  (ECF Nos. 158, 162.)[23]

Again, to allow the efficient administration of this action, the court entered an amended scheduling order and noted that the court would not consider additional briefing as to any pending motions by any party, including the instant Motions.  (ECF No. 166.)  In response, HDL filed a Motion for Modification and Reconsideration (the "Motion for Reconsideration") of the court's amended scheduling order, requesting, *inter alia*, that in light of the court's prior order denying the First Motion concerning the Pepco Claim against HDL as administratively moot, the court modify the amended scheduling order to clarify that any judgment concerning the Pepco Claim is not binding on HDL.  (ECF No. 169 at p. 16.)  Upon consideration of the Motion for Reconsideration, the court granted in part and denied in part the motion, noting, among other things, the Pepco dispositive motion (the First Motion) at ECF No. 33 as against HDL was revived and ripe for ruling.  (ECF No. 188.)  Accordingly, both Motions concerning the Pepco Claim are ripe for ruling.

---

[23] Mr. Sweeney, as bankruptcy counsel for HDL and the joint Debtors (the Companies), represented HDL and the Companies in these later proceedings.  Mr. Sweeney has since entered his appearance as counsel for HDL and the Companies in this action (ECF No. 160) and previous joint counsel for Respondents moved to withdraw from their representation of HDL, which motion the court granted.  (ECF No. 182.)

III.     **LEGAL STANDARD**

A.     **Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); see *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th

Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## IV.   ANALYSIS

In the First Motion, Ms. Denison argues she is entitled to partial summary judgment on Plaintiff HDL's claims for breach of contract and declaratory judgment (Counts I and II of the Complaint at ECF No. 1) relating to the Pepco Claim and the losses alleged therein because: (1) Ms. Denison "never had a 'duty' to represent or warrant the issues raised in the Pepco Claim" pursuant to the express terms of the APA; and (2) HDL's Pepco Claim was not an effective "Claim Notice" for indemnification and is procedurally barred under the terms of the APA. (ECF No. 33-1 at pp. 15–23.)

In the Second Motion, Ms. Denison argues she is entitled to partial summary judgment on Count I of her Third-Party Complaint (for breach of contract) against Third-Party Defendants Messrs. Horsey for the same reasons she argues HDL's breach of contract claim fails as a matter of law and because "the undisputed evidence demonstrates by a preponderance of the evidence that the Horsey brothers breached the Guaranty Agreement". (ECF No. 108-1 at pp. 18–29.)

Accordingly, the court begins by analyzing the breach of contract claims asserted by HDL in the Complaint and Ms. Denison in the Third-Party Complaint; thereafter, the court will address HDL's request for declaratory judgment (Count II of the Complaint).

### A.   Breach of Contract Claims (Count I of the Complaint; Count I of the Third-Party Complaint)

#### 1.   *Choice of Law*

As an initial matter, "[i]n a contract claim, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law of the state where the contract was formed, unless

19

there is a choice-of-law provision in the contract." *Allstate Ins. Co. v. Rochkind*, 381 F. Supp. 3d 488, 498 (D. Md. 2019) (first citing *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618 (2007); and then citing *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573 (1995)).

Here, Ms. Denison asserts that HDL's claim for breach of contract in the Complaint (Count I) and her claim for breach of contract against Messrs. Horsey in the Third-Party Complaint (Count I) are governed by Maryland law. (ECF No. 33-1 at p. 15; ECF No. 108-1 at p. 19.) HDL and Messrs. Horsey do not dispute this assertion.

Regarding applicable law, the APA provides:

> (b)    This Agreement and all questions concerning the construction, validity and interpretation hereof shall be governed by and construed in accordance with the laws of the State of Maryland, without giving effect to any choice or conflict of law provision or rule (whether of the State of Maryland or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Maryland.

(APA § 8.10(b), Ex. 2, ECF No. 1-3.) Because the APA directs application of Maryland law and the parties do not dispute that Maryland law applies, the court need not engage in a choice-of-law analysis and will apply Maryland law.

### 2.  *Breach of Representations and Warranties under Article IV of the APA*

HDL's claim for breach of contract (Count I) against Ms. Denison, specifically concerning the Pepco Claim at issue in the instant Motions, asserts HDL was "induced into purchasing the Acquired Companies because of the Defendant's representations and warranties, and as a direct result of Defendant's breach, Plaintiff suffered, and will continue to suffer, unresolved Losses and damages in an amount exceeding $4,091,128.10, to be specifically determined at trial, plus interest, attorneys' fees and costs." (ECF No. 1 ¶ 86.) Put another way, HDL alleges breach of Ms. Denison's Representations and Warranties Regarding the Companies under Article IV of the APA and claims that Ms. Denison knew, or should have

20

known following reasonable investigation, that the "representations and warranties were false when made, omitted material facts, and were otherwise materially misleading." *Id.* ¶¶ 81–82.

Ms. Denison first argues she is entitled to partial summary judgment with respect to HDL's breach of contract claim (Count I) related to the Pepco Claim because neither essential element of such a claim is met and "there is no genuine dispute of material fact that the issues raised in the Pepco Claim are explicitly excepted from the representations and warranties in §§ 4.10(d) and 4.14(a) of the" APA. (ECF No. 33-1 at p. 16.) In opposition, HDL argues summary judgment is inappropriate because there are genuine disputes of material fact as to whether the issues raised in the Pepco Claim, the easement violations, were excepted from the APA or properly disclosed. (ECF No. 34-1 at p. 9.)

In Maryland, "[t]o prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001); *accord Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 437 (D. Md. 2015). When analyzing a contract subject to Maryland law, the Fourth Circuit has explained:

> Maryland law . . . follows an "objective" approach to contract interpretation. *Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.*, 434 Md. 37, 73 A.3d 224, 232 (2013). Under this approach, the court must first look to the written language of the contract to determine whether it is "susceptible of a clear, unambiguous and definite understanding." *Id.* (quoting *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 768 A.2d 620, 630 (2001)). In making this determination, the court must consider the contract "in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Id.* at 233 (quoting *Sagner v. Glenangus Farms, Inc.*, 234 Md. 156, 198 A.2d 277, 283 (1964)). If the contract is unambiguous, then the court construes it as a matter of law. *Id.* at 232. If the contract is ambiguous— that is, "susceptible to multiple interpretations by a reasonable person"—the court turns to extrinsic evidence to discern what the parties intended in adopting the contract. *Id.* at 233–34.

21

*Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113, 126 (4th Cir. 2019).

Moreover, when interpreting contracts, Maryland courts "attempt to construe contracts as a whole, to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect." *Credible Behav. Health, Inc. v. Johnson*, 466 Md. 380, 396 (2019) (quoting *Walker v. Dep't of Human Res.*, 379 Md. 407, 421 (2004)). "Maryland law disfavors contract interpretation that leads to absurd results or nullifies contract terms." *Micro Focus (US), Inc. v. Bell Canada*, 686 F. Supp. 2d 564, 567 (D. Md. 2010) (internal citations omitted).

"Recovery in warranty, moreover, will not be permitted if the buyer of the goods had actual knowledge of their nonconformity. The same rule applies if the buyer had knowledge of facts which were so obvious that the nonconformity must have been known." *Fischbach & Moore Int'l Corp. v. Crane Barge R-14*, 632 F.2d 1123, 1125 (4th Cir. 1980). Further, a party to a transaction "is on inquiry notice when it has 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.'" *U.S. Home Corp. v. Settlers Crossing, LLC*, 33 F. Supp. 3d 596, 624 (D. Md. 2014) (quoting *Poffenberger v. Risser,* 290 Md. 631, 637 (1981)).

Under Maryland's Commercial Law Article:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

.   .   .

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an

> affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

MD. CODE ANN., COM. LAW. § 2-313.

"To establish a claim for breach of express warranty in Maryland, a plaintiff must show that: (1) a warranty existed; (2) the product did not conform to the warranty; and (3) the breach proximately caused the injury or damage." *Gray Constr., Inc. v. Medline Indus., Inc.*, No. CV GLR-19-3405, 2020 WL 5816502, at *11 (D. Md. Sept. 30, 2020) (citing *Fischbach & Moore Int'l Corp. v. Crane Barge R-14*, 632 F.2d 1123, 1125 (4th Cir. 1980)); *Zip Designs, LLC v. Glowzone Las Vegas, LLC*, No. CV CCB-17-1327, 2019 WL 1386723, at *4 (D. Md. Mar. 27, 2019) (explaining that under § 2-313(1) an express warranty is established by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," or "[a]ny description of the goods which is made part of the basis of the bargain," and citing *Spin Cycle, Inc. v. Kolender*, 186 F.Supp.2d 585, 589 (D. Md. 2002), and *Fischbach & Moore Int'l Corp., supra,* regarding elements of a claim for breach of express warranty).

Ms. Denison poses no contest to the fact that, through the APA, she made certain representations and warranties as to the Companies. (ECF No. 33-1 at p. 15.) Instead, she argues that HDL's breach of contract claim fails as a matter of law because "[u]nder the express terms of the [APA], Ms. Denison never had a 'duty' to represent or warrant the issues raised in the Pepco Claim that were, instead, excepted from the matters for which [she] otherwise maintained such a duty." *Id.* at p. 16. Therefore, Ms. Denison argues, HDL fails on both elements of its breach of contract claim, which is to say, she never made representations or warranties as to the matters subject to the Pepco Claim as alleged in the Complaint, and, therefore, never breached any supposed obligation as to same. *Id.* at p. 15.

23

As explained *supra*, Ms. Denison cites §§ 4.10(d) and 4.14(a), which respectively provide in relevant part:

> Except as set forth on <u>Schedule 4.10(d):</u> (i) the current use and occupancy of the Real Property and the operation of the Companies' Business as currently conducted thereon do not violate any applicable zoning law, easement, covenant, condition, restriction or similar provision in any instrument of record affecting the Real Property, or the Leases, and (ii) to each Seller Parties' Knowledge, no fact or condition exists that could result in the termination or impairment of presently available access from adjoining public or private streets or ways or in the discontinuation of presently available sewer, water, electric, gas, telephone or other utilities or services for any Real Property.

APA § 4.10(d) at p. 30.

> Except as set forth on <u>Section 4.14(a)</u> of the Disclosure Schedule, the Companies are, and for the last five (5) years have been, in compliance with all Laws applicable to it or its business, properties, or assets, except where the failure to be in compliance would not have a Material Adverse Effect.

*Id.* § 4.14(a) at p. 32.

Schedule 4.10(d) provides: "The Company has continuously grown inventory on the lots located next to the 15800 Sharperville Road properties without authorization from the current owner," Pepco. (Schedule 4.10(d), Ex. 4, ECF No. 33-6.) Schedule 4.14, titled "Compliance with Laws," provides in relevant part:

> Denison Landscaping maintains inventory on several parcels of land owned by [Pepco]. Specifically, the parcels owned by [Pepco] on which Denison Landscaping maintains inventory without authorization and/or approval include parcels 05-037676, 05-0371005, 05-0370726, 05-0370650, 05-0371062, and 05-0371047. . . .

(Schedule 4.14, Ex. 5, ECF No. 33-7.) As explained in detail above, the exhibits consisting of the June and October 1975 Deeds, SDAT entries, and Tax ID numbers 05-0371005 and 05-0370726 are "associated with property tracts owned by [Pepco] that cross the 2807 Accokeek Road and 3009 Accokeek Road properties." (ECF No. 33-1 ¶ 19.)

24

Citing no authority, HDL insists that Ms. Denison's disclosures at Schedules 4.10(d) and 4.14 were deficient and "wholly lacking in material facts and misleading," and that the APA "squarely placed on Defendant the obligation to identify all relevant disclosures to each specifically applicable subsection of Article IV's representations and warranties." (ECF No. 34-1 at p. 10.) Specifically, HDL urges: (1) no relevant disclosures were made for §§ 4.07 and 4.13 of the APA; (2) Schedule 4.10(d) does not apply to the provisions cited by HDL in the Complaint and is insufficient; and (3) although not mentioned in the Complaint, the representations and warranties of § 4.21(b) were also violated. *Id.* at pp. 11-16. HDL also asserts "[w]hile some agreements do provide language allowing for disclosures made regarding one representation to apply to all others, such an approach is not common and would require express language to implement." (ECF No. 34-1 at p. 14.) Here again, HDL cites no legal authority in support of this assertion.[24]

In reply, Ms. Denison argues that HDL attempts to "improperly expand the scope of the Pepco Claim in direct contravention of its own discovery responses and the Pepco Claim itself." (ECF No. 35 at p. 3.) Specifically—in Ms. Denison's first set of interrogatories to HDL, interrogatory number 11 asks that HDL "[s]tate with particularity all facts that you contend support your claim against Ms. Denison as described in the undersigned counsel's letter dated May 2, 2024[.]" (Ex. 19, ECF No. 33-21 at p. 10.) HDL's answer to the interrogatory includes a similar factual background to that included in its Pepco Claim and states that "[c]oncern over the plantings and use of the 350-foot area beneath the transmission lines resulted in the representation and warranty found in Section 4.10(d) of the" APA. *Id.* With interrogatory number 12, Ms. Denison asked HDL to identify each and every representation and/or warranty that HDL contends was inaccurate or breached and to specify the provision(s) of the APA and Seller Note containing the representation and/or warranty. HDL answered that §§ 4.10(d) and

---

[24] Other than in the legal standard section as to Rule 56 motions, HDL cites no legal authority in its papers.

4.14 of the APA pertained to Pepco Easement issues and constitute a "breach of compliance with property use and laws." *Id.* at pp. 12–13.

As explained above, the Pepco Claim asserts that the historic and ongoing use of 20 acres of the Real Property (as defined in the APA) by the acquired Companies is in violation of applicable easement restrictions. (Pepco Claim, Ex. No. 10, ECF No. 1-12.) The claim identifies the Real Property at issue as Parcels 1 and 2, describing Parcel 1 as "located in the Bull Run section of the Real Property" and Parcel 2 as "a location made up of 12.854 acres of Real Property[.]" *Id.* at pp. 2–3. The Pepco Claim further identifies the following provisions of Article IV of the APA, setting forth the Seller's representations and warranties regarding the Companies: §§ 4.14, 4.07, 4.13, and 4.10(d). *Id.* at pp. 3–4. As noted by Ms. Denison, § 4.10(d) is specifically emphasized in the Pepco Claim.

In many respects, HDL's arguments[25] here are an ill fit with allegations made in its Complaint. As one example, the Complaint asserts that Ms. Denison made false representations at closing concerning the operation of the acquired Companies in violation of §§ 4.07, 4.13, and 4.14, noting that Ms. Denison "represented and warranted that the operation of the Acquired Companies was in compliance with all applicable laws, that there were no undisclosed liabilities, and that there were not threatened legal proceedings or governmental orders." (ECF No. 1 at p. 9 n.12.) In opposition to the First Motion, HDL asserts (absent legal authority) that Schedule 4.14 is generally insufficient and was "intended to be a disclosure of any lack of compliance with" all "Laws" as defined in the APA, and not as a disclosure of all

---

[25] HDL's argument regarding violation of § 4.21(b) was raised for the first time in response to the First Motion. A plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint." *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, n.2 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *see also Hunt v. Constantine Com. Constr.*, No. CV TDC-20-1846, 2023 WL 2744491, at *8 (D. Md. Mar. 31, 2023) (declining to consider allegations made for the first time in plaintiff's opposition to motion for summary judgment because they were not included in the operative pleading). Accordingly, because violation of § 4.21(b) is not alleged in the Complaint as a basis for recovery and was raised for the first time in motions papers after many months of litigation, the court declines to consider it.

26

potential civil "Liability" or threatened "Proceedings" as set forth in §§ 4.07 and 4.13. (ECF No. 34-1 at p. 13 n.6.)

Similarly, HDL argues in its papers that Schedule 4.10(d) "does not apply to the provisions cited by HDL in the Complaint and is insufficient anyway." *Id.* at p. 14. The Complaint alleges:

> Most recently, in the Spring of 2024, Plaintiff discovered that, despite Defendant's representation at Closing that the current use and occupancy of the Real Property and the operation of the Acquired Companies' Business thereon did not violate any applicable zoning law, easement, covenant, condition, restriction or similar provision in any instrument of record affecting the Real Property, or the Leases, the Acquired Companies had been illegally operating on a Pepco and Smeco easement.

(ECF No. 1. ¶ 40.) As set forth above, this language is taken directly from § 4.10(d) but curiously excludes the carve-out language at the beginning—"[e]xcept as set forth on Schedule 4.10(d)[,]"—which qualifies the remainder of the provision. APA § 4.10(d). It is difficult to square HDL's argument that the court should shut its eyes to Schedule 4.10(d). Regardless, the court agrees with Ms. Denison that reading the cited provisions relied upon by HDL separately (*i.e.*, not in context with the APA as a whole) would defy the objective, holistic approach to contract interpretation adopted by Maryland courts and, in turn, the Fourth Circuit applying Maryland law. *See Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113, 126 (4th Cir. 2019), *Credible Behav. Health, Inc. v. Johnson*, 466 Md. 380, 396 (2019) (quoting *Walker v. Dep't of Human Res.*, 379 Md. 407, 421, 842 A.2d 53, 61 (2004)), *supra*. Further, HDL's argument effectively calls on the court simply to nullify § 4.10(d) and Schedule 4.10(d) contrary to applicable law cited above. *Micro Focus (US), Inc. v. Bell Canada*, 686 F. Supp. 2d 564, 567 (D. Md. 2010) (internal citations omitted) (explaining that "Maryland law disfavors contract interpretation that leads to absurd results or nullifies contract terms.")

HDL cannot create a genuine dispute of material fact on insistence alone. Its argument rests on incomplete quotations of (or failure to mention) relevant APA provisions, and

conclusory characterization that the disclosures Ms. Denison made are either inapplicable to the Pepco Claim or insufficient.  For example, absent citation to any record document or legal authority, HDL asserts Ms. Denison's "reliance on" disclosures made via §§ 4.10(d) and 4.14 is "hotly contested and cannot be decided without resolution of numerous disputes of fact." (ECF No. 34-1 at p. 10.)  HDL goes on to describe Ms. Denison's disclosure that the Companies had continuously grown inventory on Pepco's property for more than 20 years without authorization as "paltry" (*i.e.*, too anaemic to disclose potential liability) and further that this disclosure somehow confused HDL into incorrectly concluding there was no potential related claim or liability because of the longevity of the unauthorized use absent legal action.  *Id.* at pp. 12-13.  HDL provides no support for its assertion that the Companies had been warned (pre-APA) not to operate on Pepco's easement, by Pepco or any other party.  Here, again, HDL relies exclusively on its view of things—not the law and not the record.  On that basis alone, HDL fails to generate a triable issue.  FED. R. CIV. P. 56(c), (e).

In addition to HDL's failure to offer evidence or argument to generate a genuine dispute of material fact as described above, HDL does not address its acknowledgement at § 5.09 of the APA that it conducted an "independent investigation, review and analysis of the business, results of operations, prospects, conditions (financial or otherwise) or assets of the Seller Parties . . . ."  (APA § 5.09).  *See Fischbach & Moore Int'l Corp. v. Crane Barge R-14*, 632 F.2d 1123, 1125 (4th Cir. 1980) ("Recovery in warranty . . .will not be permitted if the buyer of the goods had actual knowledge of their nonconformity.  The same rule applies if the buyer had knowledge of facts which were so obvious that the nonconformity must have been known."); *U.S. Home Corp. v. Settlers Crossing, LLC*, 33 F. Supp. 3d 596, 624 (D. Md. 2014) (holding that a party to a transaction "is on inquiry notice when it has 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have

disclosed if it had been properly pursued'") (quoting *Poffenberger v. Risser,* 290 Md. 631, 637 (1981)).  HDL was on express notice that the Companies had been operating contrary to Pepco's property rights without authorization for more than 20 years.  HDL's conclusion that the duration of the Companies' unauthorized operations somehow meant Pepco had effectively blessed it was HDL's mistaken conclusion not the product of Ms. Denison's failure to disclose the requisite information.

The court also agrees with Ms. Denison that her Schedule 4.10(d) and 4.14 disclosures—that "The Company has continuously grown inventory on the lots located next to the 15800 Sharperville Road properties without authorization from" Pepco, (Schedule 4.10(d), Ex. 4, ECF No. 33-6); and "Denison Landscaping maintains inventory on several parcels of land owned by [Pepco] . . . without authorization and/or approval includ[ing on] parcels 05-037676, 05-0371005, 05-0370726, 05-0370650, 05-0371062, and 05-0371047," (Schedule 4.14, Ex. 5, ECF No. 33-7)—are obviously carved-out exceptions to her representations and warranties under their counterparts at §§ 4.10(d) and 4.14(a) of the APA.  Specifically, Schedule 4.10(d) discloses and puts HDL on express notice that the Companies have continuously operated contrary to Pepco property rights without authorization—*i.e.*, in violation of an "applicable . . . easement, covenant, restriction or similar provision in any instrument of record affecting the Real Property" (APA § 4.10(d))—and that the Companies have not been in "compliance with all Laws" because they have "maintained inventory without authorization and/or approval" on Pepco's property (*id*. § 4.14(a)).  It is difficult to imagine disclosures that could have put HDL on more clear notice (certainly inquiry notice) of the precise matters later raised in the Pepco Claim[26]—as well as those later addressed in Pepco's Cease-and-Desist Letter.  (Ex. 18, ECF No. 33-20.)

---

[26] The reader will recall that the Pepco Claim asserts that during the first quarter of 2024, HDL and Messrs. Horsey "discovered that the use of approximately 20 acres of the Real Property[, as defined in the APA,] was in violation of applicable easement restrictions and have been directed to remove all buildings and inventory from that area of the Real Property."  (ECF No. 1-12.)

In summary, Ms. Denison has demonstrated there is no genuine dispute of material fact and that she is entitled to partial judgment as a matter of law on Count I of the Complaint as to the Pepco Claim and HDL's asserted related Losses (as that term is defined in Art. I, § 1.01 of the APA).[27]

### 3. *Third-Party Breach of Contract Claim against Messrs. Horsey*

In the Third-Party Complaint filed by Ms. Denison against Messrs. Horsey, she asserts one count for breach of contract.  (ECF No. 8 ¶¶ 17–24.)  Therein, Ms. Denison asserts that pursuant to the Guaranty Agreement signed by Ms. Denison and Messrs. Horsey—in which Messrs. Horsey guaranteed HDL's performance of its payment obligations under the APA and the Seller Note—Messrs. Horsey have failed and/or refused to make good on HDL's payment obligations and such payments have been properly accelerated and are due and owing at this time.  *Id.* ¶¶ 18–20.  Ms. Denison's Second Motion seeks partial summary judgment on this claim as to the Pepco Claim.

Ms. Denison's arguments in the Second Motion fairly mirror those advanced in the First Motion for obvious reasons—which is to say, if she is entitled to partial summary judgment on HDL's breach of contract claim (Count I) in connection with her alleged violations of the representation and warranty provisions of the APA pertinent to the Pepco Claim and HDL's asserted related Losses, then Messrs. Horsey may not shield themselves from their obligations as Guarantor of HDL's Seller Note obligations on grounds of HDL's Pepco Claim and asserted Losses related thereto.  (ECF No. 108-1 ¶¶ 41-47; Guaranty Agreement, Ex. 2, ECF No. 8-2.)

---

[27] In favor of both the First Motion and the Second Motion (separately addressed below), in addition to her primary arguments, Ms. Denison argues (somewhat in the alternative) that the Pepco Claim was deficient as an indemnity claim under the APA and, as a result, is legally of no moment.  Specifically, Ms. Denison explains that even were HDL potentially entitled to indemnification for the Pepco Claim and HDL's asserted related Losses, HDL failed to abide the terms of the APA as to Claim Notices—rendering HDL's indemnification demand via the Pepco Claim ineffective.  In view of the forgoing analysis, the court does not reach this issue.

In opposition to the Second Motion, Messrs. Horsey understandably cloak themselves in arguments mounted by HDL in opposition to the First Motion regarding the validity of Ms. Denison's disclosures at Schedules 4.10(d) and 4.14 in connection with the Pepco Claim and HDL's asserted related Losses.[28]  Messrs. Horsey also argue that Ms. Denison's Second Motion should be denied in view of the then-pending bankruptcy proceeding (where neither was a debtor), which is no longer relevant for the reasons explained above in the Procedural History portion of this opinion.  (ECF No. 120-1 at pp. 15-16.)  For the reasons Ms. Denison is entitled to partial summary judgment as to Count I of HDL's Complaint as to the Pepco Claim and its asserted related Losses, Ms. Denison is entitled to partial summary judgment as to her related Third-Party Complaint against Robert Horsey and David Horsey.  In sum, there is no dispute that, under the Guaranty Agreement, Messrs. Horsey guaranteed HDL's Seller Note and APA payment obligations;[29] there is likewise no dispute they have made no payments as Guarantor. Because Messrs. Horsey are not entitled to invoke HDL's claimed offsets rooted in the Pepco Claim (for the reasons addressed above), Ms. Denison is entitled to judgment as a matter of law on this aspect of her claim against them.

Further, as explained above, to the extent Messrs. Horsey defend nonpayment on the Guaranty Agreement on matters referred to the challenged arbitration proceeding conducted by Mr. Vallit (*see* ECF No. 120-1 at p. 18), by memorandum opinion and order at ECF Nos. 197 and 198, the court, *inter alia*, granted the Petition at ECF No. 1 in Case No. 1:25-cv-00448-

---

[28] As a reminder to the reader, Schedule 4.10(d) provides: "The Company has continuously grown inventory on the lots located next to the 15800 Sharperville Road properties without authorization from the current owner," Pepco.  (Schedule 4.10(d), Ex. 4, ECF No. 33-6.)  Schedule 4.14, titled "Compliance with Laws," provides in relevant part:

> Denison Landscaping maintains inventory on several parcels of land owned by [Pepco].  Specifically, the parcels owned by [Pepco] on which Denison Landscaping maintains inventory without authorization and/or approval include parcels 05-037676, 05-0371005, 05-0370726, 05-0370650, 05-0371062, and 05-0371047. . . .

(Schedule 4.14, Ex. 5, ECF No. 33-7.)

[29] Further, as a matter of contract interpretation, the court finds this to be the case as a matter of law.

JRR, declaring the Vallit Report an enforceable arbitration award per the Federal Arbitration Act, and advising that the court will enter judgment consistent with same upon adjudication of the fee petition now pending at ECF No. 200.[30]

Ms. Denison has demonstrated there is no genuine dispute of material fact and that she is entitled to partial judgment as a matter of law on Count I of the Third-Party Complaint as to the Pepco Claim and HDL's asserted related Losses (as that term is defined in Art. I, § 1.01 of the APA).

### B. Declaratory Judgment Claim against Ms. Denison (Count II of the Complaint)

Count II of HDL's Complaint for declaratory judgment as it concerns the Pepco Claim similarly fails for the reasons described above. HDL seeks "declaratory judgment confirming the [p]arties rights and obligations under the [APA] and Seller Note, and specifically declaring that offsets against the amounts due under the Seller Note exist in the amounts alleged and proven under Count I and that those offsets therefore reduce the principal amount due under the Seller Note." (ECF No 1 ¶ 93.)

Ms. Denison notes concern that the Complaint is unclear as to whether HDL seeks declaratory judgment under Maryland's Declaratory Judgement statute, MD. CODE ANN., CTS. & JUD. PROC. §§ 3-401, *et seq*., or the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*. (ECF No. 33-1 at p. 17.) She correctly notes that the distinction is material because, under the federal statute, whether the court exercises its jurisdiction on a request for declaratory judgment is a matter of judicial discretion, while no such leeway is provided under the state statute. She further correctly notes that, if the court determines the federal statute applies, it

---

[30] The court also observes that in opposition to the Second Motion, Messrs. Horsey assert a multitude of purported genuine disputes of material fact to include, for example, their view that Ms. Denison's disclosures at Schedules 4.10(d) and 4.14 were inadequate "to avoid her indemnification obligations" on the Pepco Claim, (ECF No. 120-1 at ¶¶ 6-11), and that the Guaranty Agreement conditions their Guarantor obligations on HDL's entitlement to indemnification as to the Pepco Claim (and other claimed offsets resolved through arbitration and the Vallit Report), *id*. at ¶¶ 22, 24, 26. Even had the court not ruled in favor of Ms. Denison on the First Motion as to Count I, these are not genuine disputes of material fact; rather, they amount to the Horseys' interpretation and perspective on the legal effect of Ms. Denison's disclosures and their contractual obligations and entitlements under the Guaranty Agreement. Such matters are squarely in the province of the court on a Rule 56 motion.

would "appear[] prudent" for the court to render a declaratory judgment (one way or the other) to resolve the parties' dispute.  *Id.*  The court notes that HDL appears to suggest that the federal statute applies to this action: "[T]his Court possesses an independent basis for jurisdiction over the parties, *i.e.*, diversity jurisdiction, and the Court will not abuse its discretion in exercising its jurisdiction to grant this request for declaratory judgment."  (ECF No. 1 ¶ 94.)  While the court agrees that Count II is appropriately addressed under the federal Declaratory Judgment Act, in the exercise of caution, the court reviews both statutes.

Section 3-402 of the state statute provides: "This subtitle is remedial.  Its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.  It shall be liberally construed and administered."  MD. CODE ANN., CTS. & JUD. PROC. §3-402.  Section 3-406 further provides:

> Any person interested under . . . written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations under it.

*Id.* § 3-406.

Section 3-409 of the Maryland statute explains in relevant part as follows:

> (a) Except as provided in subsection (d) of this section, a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:
>
>    (1) An actual controversy exists between contending parties;
>
>    (2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or
>
>    (3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

.   .   .

> (c) A party may obtain a declaratory judgment or decree notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy, whether or not recognized or regulated by statute.

*Id.* § 3-409.

Further, the Supreme Court of Maryland has made clear:

> This Court has reiterated time after time that, when a declaratory judgment action is brought, and the controversy is appropriate for resolution by declaratory judgment, "the trial court must render a declaratory judgment." *Christ v. Department,* 335 Md. 427, 435, 644 A.2d 34, 38 (1994). "[W]here a party requests a declaratory judgment, it is error for a trial court to dispose of the case simply with oral rulings and a grant of ... judgment in favor of the prevailing party." *Ashton v. Brown,* 339 Md. 70, 87, 660 A.2d 447, 455 (1995), and cases there cited.

*Harford Mut. Ins. Co. V. Woodfin Equities Corp.*, 344 Md. 399, 414 (1997)

The federal Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

As aptly summarized by Judge Deborah L. Boardman of this court:

> This Court may issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. . . .   The statute requires the satisfaction of three elements before a court may exercise jurisdiction in a declaratory judgment action:
>
> > (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties (*e.g.*, federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.
>
> *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201). An

34

actual controversy exists if "[the] plaintiff ... present[s] a dispute that is 'real and substantial' and 'definite and concrete, touching the legal relations of parties having adverse legal interests.'" *MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n*, No. RDB-20-0504, 487 F.Supp.3d 364, 375 (D. Md. 2020) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)).

The decision to issue a declaratory judgment is discretionary. *Volvo Constr. Equip.*, 386 F.3d at 594; *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (noting the Declaratory Judgment Act's language is "nonobligatory"); *Nason Construction, Inc. v. Hebrew Quality Construction, Inc.*, No. SAG-19-3013, 2020 WL 6044295, at *5 (D. Md. Oct. 13, 2020) (citing *Volvo Constr. Equip.* and *Wilton*); *White v. NewRez LLC*, No. RDB-20-1259, 2020 WL 4748539, at *6 (D. Md. Aug. 17, 2020) ("The United States Court of Appeals for the Fourth Circuit has 'held that district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions.'" (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998))). This Court may enter a declaratory judgment "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Championship Tournaments, LLC v. U.S. Youth Soccer Ass'n, Inc.*, No. SAG-18-2580, 2019 WL 6895876, at *2 (D. Md. Dec. 18, 2019) (citing *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). Alternatively, the Court may "decline to consider a declaratory judgment when it has 'good reason' to do so." *Nason Constr., Inc. v. Hebrew Quality Constr., Inc.*, No. SAG-19-3013, 2020 WL 6044295, at *5 (D. Md. Oct. 13, 2020) (quoting *Volvo Constr. Equip.*, 386 F.3d at 594).

*BnP Ventures, LLC v. G-Force Sportfishing, Inc.*, 499 F. Supp. 3d 175, 179-80 (D. Md. 2000)

Also relevant, the federal Declaratory Judgment Act "does not provide a source of jurisdiction which is independent of substantive federal law." *Gibraltar, P.R., Inc. v. Otoki Grp., Inc.*, 104 F.3d 616, 619 (4th Cir. 1997) (citing *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16–17 n.14 (1983)). Declaratory judgment is a remedy, not an independent claim itself. "Accordingly, a federal district court may not issue a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, . . . absent an independent basis for jurisdiction." *Artis v. T-Mobile USA, Inc.*, No. PJM 18-2575, 2019 WL 1427738, at

*5 (D. Md. March 29, 2019) (citing *Univ. Garden Apartments Joint Venture v. Johnson*, 419 F. Supp. 2d 733, 742 (D. Md. 2006)).

As suggested above, the court is satisfied (and all agree) it has diversity subject matter jurisdiction over the entirety of this action.  Further, the court finds the (1) the complaint alleges an actual controversy between HDL and Ms. Denison that warrants issuance of a declaratory judgment; and (2) the court does not abuse its discretion in its exercise of jurisdiction on request of all parties.  *See BnP Ventures, LLC,* 499 F. Supp. 3d at 179-80 (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004)).  More specifically, the court finds it appropriate to exercise its discretion as to Count II of the Complaint because the parties' unyielding positions and various disputes appear cemented.  They need the court to speak.

Preliminarily, although critically, the court notes that HDL fails to respond to the First Motion as to Count II of its Complaint.  Therefore, it technically concedes the argument.  *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) (noting that "[i]n failing to respond to [defendant's] argument," the plaintiff "concedes the point"); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (explaining that a plaintiff "abandon[s]" her claim where she fails to respond to argument).  However, as to Count II, the court considers the entirety of HDL's opposition, as HDL's request for declaratory judgment largely hinges on the merits of Count I and the First Motion as to same.

For the reasons set forth herein, the court finds HDL is not entitled to the Pepco Claim-related offsets it seeks as alleged in the Complaint.  Specifically, the court finds and, by separate order declares, that HDL is not entitled to indemnification or other relief under Article VII of the APA with respect to the Pepco Claim and its asserted Losses related thereto.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, the Motions (ECF Nos. 33, 108) shall be granted.


August 11, 2026                                                    /S/

_____
Julie R. Rubin
United States District Judge