**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**DONNA DENISON,**

***Petitioner*,**

**v.**

**HORSEY DENISON LANDSCAPING, LLC, *et al.*,**

***Respondents*.**

**Case No. 1:24-cv-01484-JRR**[1]

## MEMORANDUM OPINION

Pending before the court is Donna Denison's Petition for Attorneys' Fees and Related Expenses at ECF No. 200 (the "Fee Petition"). The court has reviewed all submissions. No hearing is required. Local Rule 105.6 (D. Md. 2025).

## I. PROCEDURAL BACKGROUND[2]

By order at ECF No. 198, in accordance with the associated memorandum opinion at ECF No. 197, this court granted the Petition in Case No. 1:25-cv-00448-JRR, ECF No. 1 (the "Vallit Petition"), and concluded the Vallit report "is an arbitration award per the FAA." (ECF No. 198.) The court further explained that it would "enter judgment confirming and enforcing it as such upon final disposition of a fee petition to be filed by Petitioner [Denison]." *Id*. In its accompanying memorandum opinion, regarding arbitration fees and attorneys' fees and costs, the court explained:

> With regard to fees and expenses relating to the appointment of Vallit and work performed by Vallit pursuant to § 2.06 of the APA,

[1] To conserve space, the court has abbreviated the case caption to reflect the parties' designations in the instant matter.
[2] For convenience, the court uses here defined terms set forth in previous opinions issued by this court and commonly used by the parties and the court throughout this consolidated action. Further, the court will not recite here the background of the parties' relationships and disputes, or a long-form procedural background; instead, the court refers the reader to the memorandum opinion at ECF No. 197 for such purposes.

the APA provides that such fees and expenses:

> shall be allocated to and borne by Buyer, on one hand, and Seller, on the other hand, based upon the percentage that the portion of the amount contested by and not awarded to a Party bears to total amount in dispute, as determined by the Accounting Firm. By way of illustration, if Buyer claims that there is a deficiency amount of $100,000, Seller claims that there is an excess amount of $25,000 and the Accounting Firm determines that there is a deficiency amount of $25,000, then the costs and expenses of the Accounting Firm will be allocated 40% to Seller ($50,000 / $125,000) and 60% to Buyer ($75,000 / $125,000).

(APA § 2.06(b)(viii), Case No. 1:25-cv-00448-JRR, Ex. 2, ECF No. 1-3.)

Regarding expenses generally, Article VIII of the APA provides:

> Except as otherwise expressly provided herein, all fees, costs and expenses, including, fees and disbursements of counsel, financial advisors and accountants incurred by the Companies or the Seller Parties in connection with this Agreement, the Ancillary Documents and the Contemplated Transactions shall be paid by the Party incurring such expenses. Each Party will pay all of its expenses, including attorneys' and accountants' fees in connection with the negotiation of this Agreement, the Ancillary Documents and the Contemplated Transactions and the performance of its obligations hereunder or thereunder; provided that in any proceeding or other attempt to enforce, construe or to determine the validity of this Agreement or any Related Agreement, the non-prevailing Party will pay the reasonable expenses of the prevailing Party, including reasonable attorneys' fees and costs.

Id. § 8.01.

In light of the above, the court will order Petitioner to submit a petition for fees (and interest and expenses, as requested), setting forth relevant legal authority in support of such an award within 20

> days of entry of the court's order accompanying this memorandum opinion. HDL and Messrs. Horsey shall be afforded an opportunity to respond (and Petitioner to reply) per the rules of court. Accordingly, although the court has concluded to confirm the Vallit arbitration award and enter judgment accordingly, the court will defer entering final judgment to allow for disposition of Petitioner's forthcoming fee petition.

(ECF No. 197 at pp. 32-33 (footnotes omitted).)

As set forth above, the court invited Denison to petition for fees and costs related to the Vallit arbitration proceedings and her litigation efforts here to enforce the Vallit arbitration award per APA §§ 2.06(b)(viii) and 8.01, *supra.* Denison subsequently filed the instant Fee Petition as directed. (ECF No. 200.) HDL and the Horseys filed a joint opposition (ECF No. 201), and Denison replied (ECF No. 202). The Fee Petition is now ripe for consideration.[3]

## II. APPLICABLE LAW

The parties agree, as does the court, that Maryland law applies to the Fee Petition.[4] *LNV Corp. v. Harrison Family Bus., LLC,* No. ELH-14-03778, 2015 WL 7454044, at *7 (D. Md. Nov. 23, 2015) (citing *Ranger Constr. Co. v. Prince William Cnty. Sch. Bd.,* 605 F.2d 1298, 1301 (4th Cir. 1979)); *see also Rohn Prods. Int'l, LC v. Sofitel Capital Corp. USA, Inc*., No. WDQ-06-504, 2010 WL 3943747, at *4 n.13 (D. Md. Oct. 7, 2010) ("In a diversity case, absent a conflicting applicable federal rule of procedure, state law governs not only the actual award of attorneys' fees but also the method of determining those fees.") (citation omitted).

---

[3] In the Vallit Petition, Denison requested "pre-judgment and post-judgment interest, plus all attorneys' fees and costs, and plus all of Vallit's expenses paid by Ms. Denison." (Case No. 1:25-cv-00448-JRR, ECF No. 1 at pp. 10–11.) In the Fee Petition, Denison clarifies that she does not seek pre-judgment interest "on the principal due by virtue of the arbitration award . . . ." (ECF No. 200 at p. 1 n.2.) Therefore, the court will not calculate or award pre-judgment interest on the arbitration award.

[4] In the Fee Petition, Denison relies on federal cases and authorities on fee petitions. In opposition, HDL and the Horseys assert that Maryland state law governs the Fee Petition because it arises from a contractual fee shifting provision (not a statutory fee shifting provision) in a case pending before this court on the basis of diversity jurisdiction. In her reply, Denison advises: "Ms. Denison agrees that the Court must apply Maryland law concerning the reasonableness of attorneys' fees under the contractual fee shifting provision." (ECF No. 202 at p. 2.) The court agrees and applies Maryland law.

Under Maryland law, the court must "examine the prevailing party's fee request for reasonableness." *Myers v. Kayhoe*, 391 Md. 188, 207 (2006). "The burden is on the party seeking recovery to provide the evidence necessary for the fact finder to evaluate the reasonableness of the fees." *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 316 (2004) (citation omitted). Therefore, the party seeking a fee award must provide "detailed records" that specify "the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged[.]" *Rauch v. McCall*, 134 Md. App. 624, 639 (2000) (citation omitted), *cert. denied*, 362 Md. 625 (2001). "[W]ithout such records, the reasonableness, *vel non*, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence." *Id.* at 639 (citation omitted).

Maryland courts ordinarily utilize the "lodestar" approach when determining attorneys' fees under fee-shifting statutes. *Friolo v. Frankel*, 373 Md. 501, 504-505 (2003). The Supreme Court of Maryland, however, has held the lodestar approach is "an inappropriate mechanism for calculating fee awards" under contract fee-shifting provisions in "disputes between private parties over breaches of contract." *Monmouth Meadows Homeowners Ass'n., Inc. v. Hamilton*, 416 Md. 325, 336 (2010); *see also E. Shore Title Co. v. Ochse*, 453 Md. 303, 337 (2017) (explaining the "litigation did not involve a fee-shifting statute, and therefore the lodestar method of calculation would not be appropriate").[5]

In Maryland, where the fee petition arises from a contract, the court examines the reasonableness of the requested fees using the factors enumerated in Rule 1.5 of the Maryland Attorneys' Rules of Professional Conduct ("MRPC") codified at Title 19 of the Maryland Rules

[5] This makes sense because a "contractual fee-shifting provision is designed by the parties, not by the legislature. . . . Thus, it usually serves no larger public purpose than the interests of the parties." *Congressional Hotel Corp. v. Mervis Diamond Corp.*, 200 Md. App. 489, 505 (2011).

of Court. *Monmouth Meadows*, 416 Md. 336–37. MRPC 1.5 factors are as follows:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and
>
> (8) whether the fee is fixed or contingent.

MD. R. ATTORNEYS, R. 19-301.5(a) (MRPC 1.5).

The court need not make findings as to each individual factor—indeed, the court is not required even to mention the factors expressly—provided Rule 1.5 remains the "guiding principle in determining reasonableness." *Monmouth Meadows*, 416 Md. at 340 n.13. Further, "[a] trial court also may consider, in its discretion, any other factor reasonably related to a fair award of attorneys' fees." *Id*. at 337–38. *See Rumph & Assocs., P.C. v. PM Consulting Grp, LLC*, Case No. 25-1293-ELH, 2026 WL 1084895, *13 (D. Md. Apr. 21, 2026) (citing favorably and applying *Monmouth Meadows*); *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 465 (2012) (same).

As stated above, Maryland courts do not adhere to the lodestar approach (as federal district

courts do) in contract fee-shifting cases; however, because of the overlap of MRPC 1.5 factors with lodestar factors,[6] courts may consider cases applying the lodestar approach generally helpful (although certainly not controlling) in contract fee-shifting cases. *Congressional Hotel Corp. v. Mervis Diamond Corp.*, 200 Md. App. 489, 505 (2011); *Rumph & Assocs., P.C.,* 2026 WL 1084895 at *13. Importantly, the court acknowledges that MRCP 1.5 and Maryland courts do not consider the lodestar factor pertaining to consideration of awards in similar cases and generally do not countenance a fee award in excess of the underlying recovery. *Monmouth Meadows,* 416 Md. at 337.[7]

Similarly, as best this court can determine, the Fitzpatrick Matrix (ECF No. 200-5, Ex. 5) has not been expressly adopted or rejected by the Maryland courts. *See* Local Rule App. B (D. Md. 2025) (recognizing Fitzpatrick Matrix as appropriate guideline for determining reasonable hourly rates).[8] Notably, because MRPC 1.5(a)(3) calls upon the court to consider "the fee customarily charged in the locality for similar legal services," in undertaking this inquiry, the Fourth Circuit follows the "locality rule," whereby "[t]he community in which the court sits is the first place to look to in evaluating the prevailing market rate." *Montcalm Pub. Corp. v.*

[6] "A list of factors similar to those in MRPC 1.5 was enunciated for use in a lodestar analysis in the seminal case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The so-called '*Johnson* factors' have been adopted for use in lodestar cases by the Fourth Circuit, *see Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978), and in Maryland. *See Friolo*, 373 Md. at 522 n.2." *Rumph & Assocs., P.C.* 2026 WL 1084895, *13. The 12 *Johnson* factors are as follows: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) experience, reputation, and ability of attorneys; (10) undesirability of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases. *Friolo*, 373 Md. at 522 n.2 (cleaned up).

[7] Inasmuch as Denison does not seek an award in excess of the Vallit arbitration award, that's a non-issue here.

[8] Appendix B to the Local Rules provides: "A useful guideline for hourly rates may be provided by the Fitzpatrick Matrix as adjusted annually, with a reduction of 5% to 20% (to reflect differences between the legal markets in Washington, D.C. and Maryland). These guideline rates are intended solely to provide practical guidance to lawyers and judges when requesting, challenging, and awarding fees. The factors established by case law govern. These guidelines do not create any presumptions regarding reasonable rates. The Court recognizes that a fee award should be determined in accordance with relevant case law." Local Rule App. B.3 (D. Md. 2025) (note omitted).

*Commonwealth of Va.*, 199 F.3d 168, 173 (4th Cir. 1999) (citation omitted). "Evidence of the prevailing market rate usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate. However, in the absence of sufficient documentation, the court may rely on its own knowledge of the market." *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000) (internal citation omitted). *See also Rumph & Assocs.*, 2026 WL 1084895 at *14 (same).

As Judge Hollander noted earlier this year in *Rumph & Assocs*., *P.C.*:

> The Court "recently updated its Guidelines Regarding Hourly Rates in the Local Rules[.]" *Schrider v. Devlin Contracting & Maint., Inc.*, BAH-24-2978, 2026 WL 110330, at *4 (D. Md. Jan. 14, 2026). As to the hourly rates, the Guidelines now provide, Guidelines § 3:
>
>> Reasonable hourly rates should be determined by the Court using declarations, affidavits, stipulations by the parties, or other evidence. A useful guideline for hourly rates may be provided by the Fitzpatrick Matrix[ ] as adjusted annually, with a reduction of 5% to 20% (to reflect differences between the legal markets in Washington, D.C. and Maryland).
>
> "[T]he Guidelines also make clear that the factors identified in pertinent caselaw still govern, and that a court should determine a reasonable fee award 'in accordance with relevant case law.'" *Hernandez v. Olney Enters., Inc.*, GLS-25-01528, 2026 WL 290967, at *5 (D. Md. Feb. 3, 2026) (quoting Guidelines § 3); *see Tamikka W. v. Bisignano,* GLS-21-00541, 2025 WL 3754144, at *3 (D. Md. Dec. 29, 2025); *Trs. of Plumbers & Gasfitters Loc. 5 Ret. Sav. Fund v. Magothy Mech. LLC*, TDC-25-01249, 2025 WL 3711726, at *8 (D. Md. Dec. 22, 2025).

*Id. at* *14; *see* footnote 8*, supra.* Therefore, this court considers the Fitzpatrick Matrix a useful tool in considering the MRPC 1.5(a)(3) factor, as the Fitzpatrick Matrix reflects the court's knowledge of the local market in which it sits. *See Montcalm Pub. Corp.* and *CoStar Group, Inc., supra.*

## III. ANALYSIS

The Fee Petition has two categories of requests.[9] First, Denison requests an award of $164,593.50 in attorneys' fees, calculated as the Fitzpatrick Matrix rate discounted by 5% for all hours worked on the Vallit Petition that resulted in the court's order at ECF No. 198; or, in the alternative, $139,354.40, which is the Fitzpatrick Matrix rate discounted by 20%;[10] or, in the alternative, $114,135.00, which is the amount of all hours worked multiplied by the standard hourly rates charged by the firm in other Maryland cases in which attorney Paul Fenn serves as the "partner of record" (presumably as lead counsel). (ECF No. 202 at p. 8 n.5.)[11] Second, Denison seeks an award of $63,540.90, pursuant to § 2.06(b)(viii) of the APA, as recoupment of a portion of her fees paid to Vallit Advisors, LLC, in connection with submission of the Working Capital Adjustment ("WCA") dispute and related arbitration proceedings. The court addresses below Denison's requests in reverse order, beginning with recoupment of fees paid to Vallit Advisors. First, however, the court addresses exhibits before the court.

Appended to the Fee Petition are the Affidavit of Paul A. Fenn (ECF No. 200-1, Exhibit 1), the Affidavit of Benjamin J. Campbell (ECF No. 200-2, Exhibit 2), the Conti Fenn LLC Slip Listing setting forth the attorneys' fees and cost itemizations for work performed by Conti Fenn

[9] In her reply at footnote 8, Denison withdraws her initial request for a "fees on fees" award subject to her "right to seek any and all such fees at a later time." (ECF No. 202 at p. 14 n.8.) She advises she made this election to "hasten entry of judgment" and avoid the issue becoming "a second litigation." *Id*. While the court is never one to complain when a disputed issue is voluntarily withdrawn, postponing a battle does not in fact avoid bloodshed. The parties are strongly encouraged to find a way to avoid the issue altogether.

[10] The court understands Denison's Fitzpatrick Matrix-based requests essentially to ask for an award within the 5- to 20% discount range. *See* Local Rule App. B.3 (D. Md. 2025) ("A useful guideline for hourly rates may be provided by the Fitzpatrick Matrix as adjusted annually, with a reduction of 5% to 20% (to reflect differences between the legal markets in Washington, D.C. and Maryland).").

[11] In a partial concession to HDL and Horseys' criticism at page 13 of their opposition (ECF No. 201) that nine time entries at Slip IDs 371816, 377095, 379217, 379223, 380629, 381680, 381681, 384086, and 387034 are "unclear" as to how the time entries pertain to the Vallit Petition, Denison withdraws her request for fees for time entry 381680 where Fenn billed .8 hours to: "Correspond with client and analyze status and rent due; Correspond with Vallit." (ECF No. 200-3 at p. 14.) As a result, Denison revised her requested award as set forth in the proposed order attached to the reply brief (ECF No. 202-8), and as described above.

LLC ("Conti Fenn") in connection with the Vallit Petition (ECF No. 200-3, Exhibit 3), which Fenn and Campbell attest is true and authentic (ECF No. 200-1 at ¶ 7; ECF No. 200-2 at ¶ 6), and an Excel spreadsheet (ECF No. 200-4, Exhibit 4) created by Campbell to "calculate the lodestar amount of hours worked as expressed in the . . . itemizations [set forth in Exhibit 3] according to the various alternative sets of hourly rates set forth in Exhibit 4 (since Denison was not billed on an hourly basis in this case)," (ECF No. 200-2 at ¶ 10). Attached as Exhibit 5 to the Fee Petition is the Fitzpatrick Matrix. (ECF No. 200-5, Exhibit 5.) Exhibits 6 through 11 are "attorneys' fees awards obtained by Conti Fenn in . . . arbitration matters in the District of Columbia." (ECF No. 200 at p. 7; ECF Nos. 200-6 – 200-11, Exhibits 6-11.)

In their opposition, HDL and the Horseys do not challenge the authenticity of the Fee Petition Exhibits, but rather challenge the extent to which the court should find them relevant or persuasive (if at all). The court therefore considers all exhibits to the Fee Petition as authentic and affords them varying weight and persuasive value as set forth more fully herein.

The court also notes the Supplemental Affidavit of Benjamin J. Campbell (ECF No. 202-1, Exhibit 1 to the reply) offered to authenticate as true and accurate reply Exhibits 2 through 7 (ECF Nos. 202-2 – 202-7). Importantly, the Supplemental Affidavit is also offered to explain the genesis of what is described as a billing software related clerical error in Exhibit 3 to the Fee Petition opening brief pertaining to Fenn's hourly rate. Instead of $500 per hour (*see, e.g.*, ECF No. 200-3 at p. 1), Fenn's hourly rate during billing periods in 2024 and almost all of 2025 was, Campbell attests, $575. This is corroborated by Conti Fenn engagement agreements in other Maryland matters (reply exhibits 2, 3, and 4) setting forth Fenn's hourly rate of $575. Exhibit 5, a Conti Fenn engagement agreement of October 2025, in another Maryland matter, documents Fenn's hourly rate of $650, which the firm began to charge as his standard hourly rate near the

close of 2025 and heading into 2026, according to Campbell. At Exhibit 6 to the reply, Denison (through Campbell) offers an Excel spreadsheet to correct Exhibit 3 to her opening brief—in view of the clerical error explained above and at paragraph 7 (and elsewhere) in Campbell's Supplemental Affidavit—and which calculates the hourly attorneys' fees under the billed entries presented at Exhibit 3 to the opening brief had Conti Fenn applicable hourly rates (for years 2024, 2025, and 2026) been billed.[12] Finally, reply Exhibit 7 (ECF No. 202-7) is July 2025 email correspondence between Fenn and Accounting/HR Manager Victoria Smith of Vallit Advisors, LLC, confirming that Denison paid arbitration fees of $93,442.50 (plus a $5,000 retainer, which Smith advised would be refunded).

Based on the court's observation of Fenn and Campbell as officers of the court in this matter since its 2024 inception—including many court appearances and voluminous motions practice—the court finds entirely credible Campbell and Fenn's sworn affidavits; and considers all exhibits offered through same (except Fenn's erroneously identified $500 hourly rate in the later-corrected Exhibit 3 to the opening Fee Petition brief). The court has considered HDL and the Horseys' argument in opposition that notations in (now corrected) Exhibit 3 to the Fee Petition (ECF No. 200-3) listing Fenn's hourly rate at $500 contradict Denison's assertion (and Fenn's sworn attestation at ECF No. 200-1) that she engaged Conti Fenn on a 40% contingency fee basis for the Vallit Proceedings (*see* ECF No. 200 at p. 2), and undermines her Fee Petition request for an award of fees based on an higher hourly rate above $500. (ECF No. 201 at p. 9.) As explained, the court accepts the explanations set forth in the Supplemental Campbell Affidavit (and in the body of the reply, ECF No. 202 at pp. 5 and 6) regarding the erroneous $500 per hour notation on Exhibit 3 to the Fee Petition. As for whether Denison is entitled to a fee award based on Fenn's

[12] As explained in Fenn's affidavit, Denison engaged Conti Fenn on a contingency, not hourly, basis for all Vallit Proceedings, (ECF No. 200 at p. 2; ECF No. 200-1 at ¶ 14), and thus was not billed for fees at an hourly rate.

hourly rate above $500, the court addresses that later in this opinion.

### A. APA § 2.06 AND FEES PAID TO VALLIT ADVISORS, LLC

Denison's entitlement to $63,540.90 is a pure matter of contract, so the court need not engage in MRPC 1.5 analysis as to this portion of the Fee Petition. As set forth above and at ECF No. 197, with regard to fees and expenses relating to the appointment of, and work performed by, Vallit Advisors pursuant to § 2.06 of the APA, the APA provides that such fees and expenses:

> ". . . shall be allocated to and borne by Buyer, on one hand, and Seller, on the other hand, based upon the percentage that the portion of the amount contested by and not awarded to a Party bears to total amount in dispute, as determined by the Accounting Firm. By way of illustration, if Buyer claims that there is a deficiency amount of $100,000, Seller claims that there is an excess amount of $25,000 and the Accounting Firm determines that there is a deficiency amount of $25,000, then the costs and expenses of the Accounting Firm will be allocated 40% to Seller ($50,000 / $125,000) and 60% to Buyer ($75,000 / $125,000)."

(APA § 2.06(b)(viii), Case No. 1:25-cv-00448-JRR, Ex. 2, ECF No. 1-3.)

In her Fee Petition, Denison correctly recounts:

> Here, the "total amount in dispute" was $5,801,338.00, the positive sum of HDL's asserted negative WCA of $(1,549,010.00) and Ms. Denison's positive WCA of $4,252,328.00. See Dkt. 122-4 at 100 (wherein Larry Pullen of Vallit stated that Vallit's authority ranged "between $1,549,010 to Buyer and $4,252,328 to Seller"). Vallit concluded that a positive WCA was owed to Ms. Denison in the amount of $2,398,854.13. Thus, the "amount contested by and not awarded to" the competing parties was as follows: $3,947,864.13 as to HDL and the Horseys (the total range between HDL's asserted negative WCA and Vallit's awarded figure); and $1,853,473.87 (the total range between Ms. Denison's asserted positive WCA and Vallit's awarded figure). Taken as a portion of the total amount in dispute of $5,801,338.00, the percentages of Vallit's fees are allotted to the parties as follows: 68% payable by HDL and the Horseys (3,947,864.13 / 5,801,338); and 32% payable by Ms. Denison (1,853,473.87 / 5,801,338). Ms. Denison paid $93,442.50 in fees to Vallit that have not been repaid, which accounts for a small retainer that was refunded to Ms. Denison. Therefore, HDL and the Horseys are required by the APA to remit 68% of that amount to

> Ms. Denison, which results in $63,540.90 payable to Ms. Denison.

(ECF No. 200 at pp. 12–13, footnote omitted; *see* ECF No. 202-7, email from Vallit Advisors confirming Denison paid $93,442.50 in arbitration fees.)

HDL and the Horseys do not challenge (i) application of § 2.06(b)(viii) of the APA; (ii) that Denison paid $93,442.50 in arbitration fees; or (iii) any portion of the above-recited facts as to the "total amount in dispute" and the arbitration outcome. Instead, the Horseys assert they "should not be liable for any portion of" the requested $63,540.90 award rooted in the Vallit arbitration fees because "they were not parties to the Vallit Contract and did not directly participate" in the arbitration "in their individual capacities." (ECF No. 201 at p. 19.) Further, they assert, even were the court to find them "responsible for this amount, . . . any Order . . . should be deferred until the parties have had the opportunity to conduct minor discovery on the amounts charged by Vallit, all amounts previously paid to Vallit, and the proper apportionment of any such outstanding amounts payable to Vallit." *Id.*

As the court recently recited (as undisputed fact) in its memorandum opinion at ECF No. 205:

> "[O]n October 22, 2021, Ms. Denison and Third-Party Defendants Robert E. Horsey and David W. Horsey (jointly, the 'Buyer's Principal' under the APA) executed a Guaranty Agreement under which Messrs. Horsey (individually and jointly, as 'Guarantor' under the Guaranty Agreement) guaranteed HDL's payment obligations under the APA and the Seller Note."

(ECF No. 205 at p. 2; ECF No. 108-1 ¶ 41; *see* Guaranty Agreement, Ex. 2, ECF No. 8-2.) The court rejects the notion that the Horseys are not responsible for HDL's liabilities under APA § 2.06(b)(viii) because they were not individual signatories to the contract with Vallit Advisors to submit the WCA dispute to arbitration, or "direct" participants in the arbitration "in their individual capacities." (ECF No. 201 at p. 19.) HDL contracted (along with Denison) to engage Vallit

Advisors in accordance with the WCA dispute resolution process under the APA. The Horseys guaranteed HDL's payment obligations under the APA and the Seller Note. Therefore, the Horseys are obligated to satisfy HDL's payment obligations to Denison where HDL fails to do so on its own.

The court also rejects the Horseys' suggestion that the court should delay ruling to make way for "minor discovery" described above. Nothing in the record before the court raises any question or doubt about amounts charged by or paid to Vallit Advisors. Further, even were a colorable challenge raised about the "amounts charged by Vallit," that would have nothing to do with the undisputed record as to application of § 2.06 of the APA, the existence of the Guaranty Agreement, the "total amount in dispute," the Vallit arbitration and related report, or the $93,442.50 Denison paid in arbitration fees. Any quarrel with "amounts charged by Vallit" are to be taken up with Vallit. The Horseys' request that the court forestall ruling in favor of non-descript discovery smacks of nothing more than an effort to delay an order that the Horseys pay (whether individually or as the parties controlling HDL) what they owe.

**B. CONTI FENN ATTORNEYS' FEES**

The court now turns to Denison's request for attorneys' fees pertaining to the Vallit Petition.

As recited earlier, Denison engaged Conti Fenn on a 40% contingency fee basis (less any recovery of attorneys' fees) as to all "Vallit Proceedings"—defined in the Fee Petition to include submission of the WCA dispute to arbitration (which resulted in the Vallit report, confirmed as an arbitration award by this court by order at ECF No. 198) as well as the Vallit Petition initially filed as Case No. 1:25-cv-00448-JRR (later consolidated with this action by order ECF No. 73). In arbitration, Denison was awarded $2,398,854.13. (ECF No. 197 at p. 7; Case No. 1:25-cv-00448-

JRR, ECF No. 1 ¶¶ 25-26; Ex. 1, Case No. 1:25-cv-00448-JRR, ECF No. 1-2.) Thus, under the terms of her contingency engagement of Conti Fenn, the firm earned a fee equal to $959,541.652. Despite the contingency fee agreement with Denison, during its engagement, the firm has maintained detailed itemizations of work performed by attorneys and paralegals broken down in the typical 6-minute (or 1/10-of-an-hour) increments. Itemizations of work are at Exhibit 3 to the opening brief as corrected by Exhibit 6 to Denison's reply. (ECF Nos. 200-3, 202-6.)

For work performed in 2024 and 2025, Fenn's hourly rate was $575;[13] Campbell's hourly rate was $350; associate attorney John Samuel Chase's hourly rate was $350; paralegal services of Kaitlyn Mueller and Gwen Kubin were charged at $150/hour. For work performed in 2026, Fenn's hourly rate was $650; the hourly rates of Campbell, Chase, Mueller, and Kubin remained at 2025 rates. (ECF No. 202-6.)

The court has reviewed Fenn and Campbell's attestations as to their own professional background, experience and skills, as well as those of associate attorney Chase, and the value added by Paralegals Muelle and Kubin. (ECF Nos. 200-1, 200-2.) Fenn has been a licensed attorney in the state of Maryland since 1998 and a member of the bar of this court since 1999. Following approximately six years at DLA Piper (then, Piper & Marbury), Fenn co-founded Conti Fenn in 2004. His practice focuses on complex business and other commercial litigation. Fenn served for eight years on the Baltimore City Board of Ethics. Fenn attests that Chase is an attorney licensed in the state since 2023; as an associate at the firm, Chase supports Fenn and Campbell, and has appeared and participated in a wide diversity of litigation matters for the firm. Fenn also

[13] The court notes that reply Exhibit 6 (ECF No. 202-6) does not reflect the late 2025 elevation of Fenn's rate to $650 for any work performed in 2025 (and only notes that rate change for work recorded in 2026) despite the fact that the firm increased his hourly billable rate to $650 as a standard matter in late 2025. Therefore, the court construes the alternative request for $114,135.00 in fees as a reduction (albeit minor) in the fees the firm actually could have billed over the same period of time.

expresses that Paralegals Mueller and Kubin are "exceptional" and the firm "constantly" relies on their work for "the successful and competent representation of clients." (ECF No. 200-1 at ¶¶ 2, 3, 8-10.) Campbell has been licensed to practice in Maryland since 2018, served as a circuit court judicial law clerk, and joined Conti Fenn in 2019. Like Fenn, Campbell's practice focuses primarily on commercial and business litigation. Campbell echoes Fenn's assessment that Mueller and Kubin are top quality paralegals whose work is "constantly relied upon by Conti Fenn" in service to its clients. (ECF No. 200-2 at ¶¶ 2-3.) While the court has not had the benefit of observing Chase argue or present during court proceedings, the observation of the court as to Fenn and Campbell is that each is a highly competent, prepared, and sophisticated attorney, exhibiting courteousness and professionalism to the court and opposing counsel at every turn.

The court notes that under the Fitzpatrick Matrix, a reasonable hourly rate for Fenn in 2024, with a market discount of 5% to 20%, was $664.80 to $789.45; those rates increase to $724.00 to $859.75 for 2025. The matrix does not include rates for 2026. Under the Fitzpatrick Matrix, a reasonable hourly rate for Campbell in 2024, reduced for the market, was $486.40 to $577.60; those rates increase to $540.00 to $641.25 for 2025. Under the Fitzpatrick Matrix, a reasonable hourly rate for Chase in 2024, reduced for the market, was $415.20 to $493.05; those rates increase to $464.80 to $551.95 for 2025. Under the Fitzpatrick Matrix, a reasonable hourly rate for Mueller and Kubin in 2024, reduced for the market, was $188.80 to $224.20; those rates increase to $204.00 to $242.25 for 2025.

In view of Fenn's nearly three decades of work as an attorney with a sophisticated practice focused on matters squarely on target with this action, and considering the Fitzpatrick Matrix as a yardstick of what is generally reasonable in this market, the court finds Fenn's hourly rates of $575 for 2024 and 2025, and $650 for work performed in 2026, infinitely reasonable and appropriate.

The court observes that while Campbell has been a practicing attorney for longer than Chase, Chase served as a judicial clerk; it is widely known and accepted that this is a common factor firms consider in determining the value of an attorney and, in turn, an appropriate billing rate. Thus, while the court observes that Campbell and Chase are both billed at $350/hour, given Chase's clerkship experience and the fact that both Chase and Campbell are billed by the firm at hourly rates far below market rates, the court finds their $350 hourly billable rate for 2024 through 2026 reasonable as a general proposition. Also notable is that their rates remained fixed (and well below the Fitzpatrick Matrix) for the entire billing period before the court. Finally, as with Chase and Campbell, the firm's hourly rates for paralegals Mueller and Kubin remained fixed for all of 2024 through 2026 and well below the Fitzpatrick Matrix yardstick. Therefore, and given Campbell and Fenn's attestation to the high value and importance of their work, their hourly rates are reasonable.[14]

Turning to the Vallit Petition substance, following HDL and the Horseys' failure to pay any amount toward satisfaction of that award, Denison sought relief from the court. In so doing, Denison was successful in all material respects, which is to say she was the prevailing party on the Vallit Petition in its entirety. HDL and the Horseys suggest Denison enjoyed marginal success because Vallit awarded her 68% of what she sought through arbitration. That mistakes the point. Her success at arbitration is not the question before the court; the consideration the court refers to here (per MRPC 1.5(a)(4)) is the results she obtained in court. On the Vallit Petition, Denison obtained all relief requested.

The litigation underlying the Vallit Petition proved highly contentious and involved extensive briefing—including on a what evolved into a key legal question with relatively

[14] The court has also taken note that Mueller or Kubin accompanies Fenn and Campbell to court to assist them as needed, which further persuades the court of their value to the firm's client services.

underdeveloped jurisprudence—on what Denison refers to as the "expert-versus-arbitration dichotomy." (ECF No. 202 at p. 10; ECF No. 197 at pp. 17–22.) While this court would not go so far as to say (and no party suggests) the question was novel (in the vein of a case of first impression), resolution of the question in Denison's favor was essential to the overall ruling in her favor; it was a central feature of HDL and the Horseys' opposition to the Vallit Petition, and the body of available jurisprudence was not robust or plentiful. The court agrees with Denison that considerable additional research on a challenging and nuanced legal issue was critical to her reply brief and ultimately fundamental to her success. (ECF No. 202 at pp. 9–10.)

That said, the court notes that all parties, including Denison, erroneously directed the court to the Maryland Uniform Arbitration Act instead of the Federal Arbitration Act. (ECF No. 197 at pp. 12–17.) The misstep had no bearing whatsoever on the outcome; however, the attorney time researching the MUAA and related cases should have been spent on the FAA. That said, had the parties correctly identified the federal statute as the controlling body of law from the outset, the time mis-spent on the MUAA would have been spent on the FAA—perhaps not in an hour for hour trade, but the court does not view this as a meaningful issue on review of the Fee Petition as whole or with respect to MRPC 1.5(a)(1) and (4) factors.

In view of the foregoing, the court does not find persuasive HDL and the Horseys' challenge that Conti Fenn time of 35.4 hours spent on the reply in support of the Vallit Petition is excessive because the issue "had already been briefed, in part;" neither is the court moved by generalized, sweeping assertions that time spent was "excessive" or "in excess of any reasonable amount of time." (ECF No. 201 at p. 14.) Further, to the court's view, the time and labor involved in pursuing success for Denison on the Vallit Petition was largely a function of HDL's refusal to make good on the award. To be clear, the court makes no commentary on HDL's decision to heed

advice of counsel and the like, but—except in cases involving allegations of fraud, challenging the existence of the scope of the agreement, *etc*.—a petition to enforce or enroll an arbitration award is not commonly an arduous legal services task or engagement. HDL and the Horseys' election to challenge its enforcement on grounds the court ultimately rejected *en toto* is chiefly to blame for the extent of fees Denison seeks on the Fee Petition. At bottom, while the court takes very seriously its obligation to vet and scrutinize the expenditure of attorney and paralegal time, and is mindful that Denison bears the burden, HDL and the Horseys will not be heard to complain that Conti Fenn had to throw considerable time into a matter that might have required a mere fraction of the hours spent were the litigation not beset with meretricious defenses.

Further, the court disagrees with HDL and the Horseys that the billing entries at Slip IDs 371816, 377095, 379217, 379223, 380629, 381681, 384086, and 387034 are "unclear" as to how the time entries pertain to the Vallit Petition. These entries describe time spent on the "W/C Adjustment" claim, analyzing the "Purchase Contract," reviewing the "Vallit Report," analysis of "documents and information sent to Vallit by HDL." Especially when compared against the chronology of filing events in this action and Case No. 1:25-cv-00448-JRR prior to consolidation, the court does not strain in the slightest to see how these time entries pertain to the Vallit Petition.

The court finds that all time entries set forth at Exhibit 3 and reply Exhibit 6 – save Slip ID 381680, which Denison has withdrawn—are reasonable and appropriate. That said, the court declines to award fees based on the Fitzpatrick Matrix. The matrix is a tool to implement the locality rule and to evaluate the reasonableness of the fee award request against fees customarily charged in the market (as judicially noticed by the court by way of the Local Rules). The rates set forth in the Fitzpatrick Matrix help the court assess overall reasonableness; the matrix is not an abacus for fee awards. Further, the court declines to apply 2026 hourly rates for work performed

in years 2024 and 2025. Therefore, the court award will award Denison fees as a function of Vallit Petition-related work performed at the rates the firm billed in the years the work was actually performed.

## IV. CONCLUSION[15]

For the reasons set forth herein, by separate order, the court will grant in part and deny in part the Fee Petition.

/S/
Julie R. Rubin
United States District Judge

September 4, 2026

[15] Nothing in the record suggests Conti Fenn's engagement precluded other work by the firm; or that any particular time limit or emergency circumstance pertained to the Vallit Petition (outside the ordinary client wish that matters be resolved as promptly as possible). Further, the court is unaware whether Conti Fenn's relationship with Denison predates 2024. MRPC 1.5(a)(2), (5), (6). These factors do not affect the court's analysis.